810 A.2d 1021

STATE of Maryland

v.

Donald TAYLOR, Jr.

Larry Bledsoe, George Kopp, and Joseph Johnson

v.

State of Maryland.

Nos. 124, Sept. Term, 2000, 6, Sept. Term 2002.

Court of Appeals of Maryland.

Nov. 12, 2002.

618

Kathryn Grill Graeff, Assistant Attorney General, Gary Bair, Solicitor General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), for appellant.

John L. Kopolow, Assistant Public Defender, Nancy S. Forster, Deputy Public Defender (Stephen E. Harris, Public Defender, on brief), for appellee.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and ROBERT L. KARWACKI, (retired, specially assigned), JJ.

HARRELL, J.

In these cases, consolidated for the purpose of this decision, we again consider the scope of double jeopardy protections under Maryland common law. Specifically, we decide whether jeopardy attaches in a proceeding where a trial judge grants a pretrial motion to dismiss based on a finding of insufficiency of evidentiary facts beyond those contained within the "four corners" of the charging document, i.e., criminal indictment or criminal information.

We set out the background facts and procedural history of each case separately.

## I.

### A. *Bledsoe v. State*

Petitioners Larry Bledsoe, George Kopp, and Joseph Johnson ("Petitioners") were charged with conspiracy to violate Prince George's County Code (1967), Subtitle 14, § 14–139.02(b)(2) ("Ordinance") making it illegal to appear fully nude in a public place.[1] The alleged criminal activity, as recited in each of the criminal informations, took place on 22 May 1999 at The Showcase Theater ("Showcase") in Beltsville, Maryland.

Petitioners were charged in the District Court of Maryland, sitting in Prince George's County, by criminal informations filed 11 August 1999 charging that each of the three men conspired to have several women "engage in public nudity" in violation of Maryland common law and § 14–139.02(b)(2). The cases were scheduled for trial on 14 February 2000.

Petitioners filed a pre-trial "Motion to Dismiss, or in the Alternative for Judgment of Acquittal" on 16 December 1999. The parties argued the motion the following day. Consistent with their motion, Petitioners argued that the form of the criminal informations, as filed, were duplicitous on their face because they respectively alleged two violations in a single

---

1. Prince George's County Code (1967), Subtitle 14, § 14–139.02, reads in its entirety:
> (a) For the purposes of this Section, the term "nudity" shall mean the showing of the human male or female genitals or pubic area, with less than a fully opaque covering.
> (b) It is unlawful for any person to knowingly or intentionally, in a public place:
> (1) Engage in sexual intercourse;
> (2) Appear in a state of nudity; or
> (3) Fondle one's own genitals or those of another person.
> (c) Any person who violates any provision of this Section shall be guilty of a misdemeanor punishable by a fine not exceeding One Thousand Dollars ($1,000) or by imprisonment not exceeding six (6) months, or both.

count. Petitioners also argued that the charges could not stand "because there's simply been no violation of the Prince George's County Code." To support that point, Petitioners contended that the Showcase was not a public place under the Ordinance, and therefore the crime of public indecency could not be committed there. If the underlying crime could not be committed, so the argument went, there could be no conspiracy to commit that crime. Finally, Petitioners asserted that the Ordinance, as applied to nude dancing, was unconstitutionally overbroad on its face and therefore had a chilling effect on speech. In response, the State ventured that nude dancing was not a protected form of speech and that the Showcase was a public place for purposes of the Ordinance.

After hearing the initial arguments, the judge stated: "[I]n order for me to rule on this motion, it seems as though the Court has to make at least certain factual findings, or certain factual findings need to be stipulated to." In response, Petitioners and the State stipulated to the following facts: (a) at the time and place of the alleged criminal activity, nude dancing took place in an enclosed building located in an industrial park; (b) the Showcase was a for-profit business that charged an admissions fee; (c) the Showcase did not admit anyone under the age of 18;[2] and (d) the building had external doors and inside was a stage, lighting, music, and women initially clothed in costumes who eventually achieved a state of undress during their performances.[3] At the conclusion of the motions hearing the judge took the matter under advisement. On 30 December 1999, before the judge ruled on

---

**2.** The State stressed this point by insisting during the hearing, "... the State would want opposing Counsel to proffer that it was a for profit enterprise, that this wasn't a charitable, nude dancing club, raising money for the Salvation Army or something."

**3.** Although not alleged in the criminal informations, or initially stipulated to by the parties at the motions hearing, the State later asserted in its memorandum in opposition to the motion to dismiss that "it is undisputed that the Defendants owned, operated, or worked at the Theater while nude dancing by women ... took place."

the motion, the State submitted a memorandum in opposition to the motion to dismiss with additional evidence attached.[4]

On the date scheduled for trial, the District Court judge issued an oral ruling, accompanied by a written opinion, granting the motion and dismissing the criminal informations. He applied statutory interpretation principles to conclude that, based on the totality of the facts before him, the Showcase was not a "public place" under the statute. He also opined that "nude dancing is considered constitutionally protected expression pursuant to the first amendment of the United States Constitution and as applied to the States through the 14th Amendment." Although Petitioners had argued that the statute was unconstitutional both on its face and as applied, the judge only found it to be unconstitutional as applied to the facts of the matter before him. Relying on *Hughes v. Cristofane*, 486 F.Supp. 541 (D.Md.1980), the judge held that "[a]pplying the reasoning of the *Hughes* decision to the present facts, we find that [the Ordinance] imposes a chilling effect on constitutionally protected expression."

The State noted an appeal to the Circuit Court for Prince George's County.[5] The appeal was heard on 26 January 2001. Petitioners asserted that the Circuit Court lacked jurisdiction to hear the appeal because the District Court judge's ruling amounted to an acquittal and the appeal therefore was barred by federal constitutional and Maryland common law double jeopardy principles and, even if the Court had jurisdiction to hear the appeal, the District Court judge's ruling should be upheld as a correct interpretation of the Ordinance.

---

**4.** The attachment was an advertisement flyer for the Showcase describing it as "an adult entertainment theater," offering "exotic 'all nude' female dancers."

**5.** The State purported to appeal pursuant to the authority found in Maryland Code (1974, 2002 Repl.Vol.), Courts and Judicial Proceedings Article, § 12–401(b)(1)(ii), which permits the State to appeal in a criminal case when a final judgment has been entered in the District Court "granting a motion to dismiss, or quashing or dismissing a charging document."

The Circuit Court judge issued a written opinion on 3 January 2002. She concluded that the phrase "commonly open to the public" in the Ordinance was intended by the County Council to have its plain and ordinary meaning, and that the Showcase was a "public place" pursuant to the Ordinance. She also determined, relying on federal constitutional principles discussed in *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), that jeopardy does not attach in a proceeding in which the trial court dismisses charges. The judge concluded that the District Court erred in dismissing the charges against Petitioners, and remanded the matters to the District Court for trial.

Petitioners filed a petition for writ of certiorari in this Court on 1 February 2002, pursuant to Maryland Code (1973, 2002 Repl.Vol.), Courts and Judicial Proceedings Article, § 12–302(c)(1). Certiorari was granted to consider the following issues: whether double jeopardy principles were triggered by the previous dismissal of the criminal action by the District Court, thus requiring reversal of the Circuit Court's judgment; whether the Showcase is a "public place" subject to the Ordinance; and, whether Petitioners would be denied their right to a speedy trial if the long delayed Circuit Court ruling were allowed to stand.[6] *Bledsoe v. State*, 368 Md. 526, 796 A.2d 695 (2002).

### B. *State v. Taylor*

Donald Taylor, Jr. ("Appellee") was charged by criminal information in the Circuit Court for Frederick County with three counts of violating Maryland Code (1978, 1996 Repl.Vol., 2001 Supp.), Article 27, § 419A,[7] one count of attempted third

---

**6.** Although three issues were raised, our decision on the double jeopardy issue eliminates the need to reach the remaining two issues.

**7.** Maryland Code (1978, 1996 Repl.Vol., 2001 Supp.), Article 27, § 419A(e) provides that

every person who knowingly compiles, enters, transmits, makes, prints, publishes, reproduces, causes, allows, buys, sells, receives, exchanges, or disseminates any notice, statement, advertisement, or

degree sexual offense,[8] and one count of attempted second degree assault.[9] Counts I, II, and III of the Criminal Information, charging the violations of § 419A, were identical, with the exception of the charged date of the offenses. The substance of the charges read as follows:

that Donald Taylor Jr., on or about October 8, 1999, at Frederick County, Maryland, did, by means of a computer, knowingly compile, enter, transmit, make, print, publish, reproduce, cause, allow, buy, sell, receive, exchange, or disseminate a notice, statement, advertisement, or minor's name, telephone number, place of residence, physical characteristic or other descriptive or identifying information for the purpose of engaging, facilitating, encouraging, offering or soliciting unlawful sexual conduct or sadomasochistic abuse of or with a minor; contrary to the form of the Act of Assembly in such cases made and provided and against the peace, government, and dignity of the State. (Article 27, Section 419A).

Count IV read as follows:

that Donald Taylor, Jr., on or about October 29, 1999, at Frederick County, Maryland, did unlawfully attempt to commit a sexual offense in the third degree upon a minor; contrary to the form of the Act of Assembly in such cases

---

minor's name, telephone number, place of residence, physical characteristic or other descriptive or identifying information for the purpose of engaging, facilitating, encouraging, offering or soliciting unlawful sexual conduct or sadomasochistic abuse as defined in § 416A of this article of or with any minor is subject to the penalty provided in subsection (f) of this section.

**8.** Maryland Code (1978, 1996 Repl.Vol., 2001 Supp.), Article 27, § 464B(a) provides in relevant part,

A person is guilty of a sexual offense in the third degree if the person engages in: ...
(4) A sexual act with another person who is 14 or 15 years of age and the person performing the sexual act is at least 21 years of age; or
(5) Vaginal intercourse with another person who is 14 or 15 years of age and the person performing the act is at least 21 years of age.

**9.** Maryland Code (1978, 1996 Repl.Vol., 2001 Supp.), Article 27, § 12A provides that "[a] person may not commit an assault."

made and provided and against the peace, government, and dignity of the State. (Common Law).

Count V read as follows:

that Donald Taylor, Jr., on or about October 29, 1999, at Frederick County, Maryland, did unlawfully attempt to assault a minor in the second degree; contrary to the form of the Act of Assembly in such cases made and provided and against the peace, government, and dignity of the State. (Common Law).

On 29 February 2000, Appellee filed a motion to suppress evidence, dismiss the charges, or, in the alternative, grant a change of venue. For purposes of the motions hearing, Appellee moved into evidence, as Defendant's Exhibit No. 1, a photocopy of a "confidential" memorandum prepared by TFC Brian Moser of the Computer Crimes Unit of the Maryland State Police. This memorandum purportedly was relied on by the State to prepare the criminal information. Appellee and the State proceeded at the motions hearing based on an agreement that TFC Moser's memorandum was an accurate and complete summary of the facts underlying the charges in the information. The memorandum was received into evidence at the motions hearing without objection from the State.

We recite the pertinent facts from the memorandum. On approximately 5 October 1999, the Maryland State Police received a complaint that Appellee, a 43 year old male living in New Jersey, was using the Internet to solicit children to have sex. Acting on the complaint, Trooper Wendy Burnhardt, a member of the Maryland State Police Computer Crimes Unit, posed as a 15 year old girl named "Stephanie" living in Frederick, Maryland, in order to engage in e-mail conversations with Appellee. "Stephanie" and Appellee exchanged a series of e-mail messages and engaged in online chat sessions. Appellee sent "Stephanie" image files that included photos of himself, his motorcycle, and a sexually explicit cartoon of some of Charles Schultz's "Peanuts" characters. The messages from "Stephanie" were sent from a covert office in Columbia, Maryland.

During these online conversations and in the course of one telephone call, Appellee made statements indicating that he preferred having sex with young girls. On several occasions, Appellee instructed "Stephanie" to masturbate. On 15 October 1999, Trooper Burnhardt called Appellee and, during their phone call, Appellee described in explicit detail the sexual acts he said he desired to engage in with "Stephanie."

On 28 October 1999, over the Internet, Appellee and "Stephanie" arranged to meet the next day at 5:00 p.m. in a parking lot adjacent to a Pizza Hut in Frederick, Maryland, and then go somewhere to have sex. During previous conversations, "Stephanie" advised Taylor that she would not have sex with him unless he had unlubricated condoms. He told her that he wanted to bring her a teddy bear.

At 4:30 p.m. on 29 October 1999, the police set up surveillance at the Pizza Hut. Trooper Burnhardt was dressed as a 15 year old girl, wearing baggy clothes, and a back pack, and her hair in a pony tail. Appellee showed up at approximately 5:00 p.m. and the police arrested him after he motioned with his head toward Trooper Burnhardt directing her to come to his car.

Appellee waived his *Miranda* rights and, in a statement to the police, admitted to traveling to Maryland to have sex with a minor. He also told the police that he had rented a motel room in Frederick, and that he had condoms and a teddy bear in the room. On 30 October 1999, the police executed a search warrant on the hotel room and seized, *inter alia*, one teddy bear and a box of three unlubricated condoms.

Based on the facts contained in the police memorandum, Appellee argued that venue was improper in Frederick County as to the three child pornography charges because the alleged offenses, which were based on computer transmissions, did not occur in Frederick County. Appellee further contended that the conduct in question did not amount to a crime under the statute. He asserted that his conduct, as described by the first three counts of the information, did not fall within the statutory offense.

Appellee also argued that the Circuit Court lacked subject matter jurisdiction over the attempt charges. First, he reasoned that, because Trooper Burnhardt was not actually 15 years old, the doctrine of legal or factual impossibility precluded conviction on those charges. Second, he claimed that his actions were mere preparation, and not the substantial step towards completion of the crimes that is required for attempt crimes.

The State replied that the Circuit Court did not lack subject matter jurisdiction. As to the pornography crimes, the State contended that the defendant's conduct was covered by the statute. As to the attempt charges, the State contended that the defense of legal impossibility failed and that factual impossibility is not recognized as a defense in Maryland. While the prosecutor made a factual argument to the court that the defendant indeed had taken substantial steps toward the accomplishment of the crimes, he allowed that "in terms of intent, I'm not sure whether that's really something that's more appropriately ruled on a motion for judgment of acquittal. I'm not sure it's a motion to dismiss necessarily. But nevertheless I believe that there was a substantial attempt."

The judge granted Appellee's motion and dismissed all charges. She dismissed the three child pornography charges because, as she explained, she concluded that the facts showed that the e-mail conversations did not violate the statute. She dismissed the attempt charges on two grounds: first, although the charges alleged a crime involving a minor, the facts alleged that an adult was involved rather than a minor, and therefore she resolved that it was legally impossible for Appellee to commit the offenses charged; and second, Taylor's conduct was mere preparation and did not constitute a substantial step towards the commission of the crime.

The State noted a timely appeal to the Court of Special Appeals.[10] We granted certiorari on our own initiative, prior

---

10. The State of Maryland appealed pursuant to Maryland Code (1957, 1998 Repl.Vol., 2001 Supp.), Courts and Judicial Proceedings Article,

to consideration by the intermediate appellate court, so that we could decide whether the Circuit Court erred in granting the motion to dismiss the criminal information. *State v. Taylor,* 362 Md. 360, 765 A.2d 142 (2001). After oral argument on that issue, we ordered the parties to file supplemental briefs and to argue the following additional questions:

> If, in purporting to rule favorably on a motion to dismiss, the court goes beyond the mere allegations contained in the charging document (or as supplemented by any bill of particulars) and considers evidence or facts not specified in the charging document:
>
> 1. (a) does the ruling become one on the evidence in the context of federal or state double jeopardy principles, and
>
> (b) did that occur in this case?
>
> 2. does the State have a right of appeal from that ruling in light of federal or state double jeopardy principles or Maryland Code (1974, 1998 Repl.Vol., 2001 Supp.), § 12–302(c)(1) of the Courts and Judicial Proceedings Article?

## II.

### *Double Jeopardy Principles Generally*

Double jeopardy protections have long existed in Maryland common law,[11] *see Gianiny v. State,* 320 Md. 337, 347, 577 A.2d 795, 799–800 (1990); *Pugh v. State,* 271 Md. 701, 705, 319 A.2d 542, 544 (1974); *State v. Barger,* 242 Md. 616, 619, 220 A.2d 304, 306 (1966), and, since the Supreme Court's decision in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23

---

§ 12–302(c)(1), which provides that "[t]he State may appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition."

11. Illustrative of the embedded nature of these principles is the fact that Maryland was one of the first states to suggest that a Double Jeopardy Clause be among the first amendments to the United States Constitution. Maryland's proposed version of the Double Jeopardy Clause read "[t]hat there shall be ... no appeal from matter of fact, or second trial after acquittal...." *United States v. Wilson,* 420 U.S. 332, 340 n. 8, 95 S.Ct. 1013, 1020 n. 8, 43 L.Ed.2d 232, 240 n. 8 (1975).

L.Ed.2d 707 (1969), as a matter of federal constitutional law by application to the States of the Fifth Amendment through the due process clause of the Fourteenth Amendment of the United States Constitution.[12]

The purposes underlying double jeopardy include "protect[ing] the integrity of a final judgment," *United States v. Scott,* 437 U.S. 82, 92, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65, 74 (1978), and assuring that the State "with all its resources and power" is not "allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957). The basic premise of the double jeopardy prohibition is that when a criminal defendant has been put in jeopardy once, he or she may not be so placed again regarding the same offense. He or she is protected from successive prosecutions as well as cumulative punishments.

The principle of double jeopardy encompasses three interrelated pleas at common law: *autrefois acquit, autrefois convict,* and pardon. *See United States v. Wilson,* 420 U.S. 332, 340, 95 S.Ct. 1013, 1020, 43 L.Ed.2d 232, 239 (1975); *Parks v. State,* 287 Md. 11, 14, 410 A.2d 597 (1980). The pleas of *autrefois convict* and pardon provide that a criminal defendant may not be prosecuted twice for the same offense after conviction and may not be punished multiple times for the same offense. Therefore, the analytical challenges in cases involving *autrefois convict* and pardon are determining the point in the proceedings at which jeopardy attaches such that retrial would violate the prohibition against double jeopardy. The result of this inquiry is that jeopardy attaches at a jury

---

**12.** The Supreme Court in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), held that the Double Jeopardy Clause of the Fifth Amendment was applicable to the States through the Fourteenth Amendment.

trial when the jury is empaneled, and at a bench trial when the judge begins to hear or receive evidence. *Blondes v. State,* 273 Md. 435, 444–45, 330 A.2d 169 (1975). This Court recognized in *Blondes* that the judge "begins to hear evidence" when the first witness begins to testify or when documentary evidence, such as a stipulation or record of prior proceedings, is submitted. *Blondes,* 273 Md. at 445, 330 A.2d at 174. Maryland courts also have recognized, without adopting, the minority view that in a bench trial jeopardy attaches when the first witness is sworn. *See id.*

Even when a final determination of guilt or innocence is not made in a prior proceeding, a criminal defendant may have a protected interest in avoiding multiple prosecutions. Both the United States Supreme Court and this Court have recognized two situations in which such an interest may arise: when a mistrial is declared, and when the trial judge otherwise terminates the proceedings favorably to the defendant on a basis not related to factual guilt or innocence. *See Scott,* 437 U.S. at 92, 98 S.Ct. at 2194, 57 L.Ed.2d at 75–76. *See also Ware v. State,* 360 Md. 650, 707, 759 A.2d 764, 795 (2000) (noting that the Double Jeopardy Clause of the United States Constitution operates to limit the power of the government to retry a defendant who has succeeded in persuading a court to set his conviction aside when the conviction has been reversed because of the insufficiency of the evidence (citing the Supreme Court in *Oregon v. Kennedy,* 456 U.S. 667, 677, 102 S.Ct. 2083, 2090, 72 L.Ed.2d 416, 426 (1982))); *Thanos v. State,* 330 Md. 576, 589, 625 A.2d 932, 938 (1993) noting that a criminal defendant does not waive his double jeopardy protections upon moving for a mistrial where the State intentionally coaxes the defendant into moving for a mistrial.

In the case of a mistrial granted on the initiative of a party or the court's own initiative, although the record may support that the trial judge contemplated that there would be a new proceeding, the trial judge's intent is not determinative as to whether jeopardy attached. Rather, double jeopardy principles may protect against governmental actions that intend to provoke mistrial requests and subject a defendant to multiple

prosecutions with their attendant burdens. When a defendant successfully terminates his or her trial prior to its conclusion by a motion for mistrial, double jeopardy principles do not prohibit a second prosecution, however, if the mistrial is requested by the defendant and is not the result of judicial overreaching or deliberate prosecutorial misconduct. *Scott,* 437 U.S. at 93–94, 98 S.Ct. at 2195, 57 L.Ed.2d at 76; *Ware,* 360 Md. at 709, 759 A.2d at 795; *Booth v. State,* 301 Md. 1, 3, 481 A.2d 505, 506 (1984); *Tichnell v. State,* 297 Md. 432, 440–41, 468 A.2d 1, 5 (1983); *Bell v. State,* 286 Md. 193, 205–06, 406 A.2d 909, 915–16 (1979). The Supreme Court noted in *Scott* that

> such a motion by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact. "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error."

437 U.S. at 94, 98 S.Ct. at 2195, 57 L.Ed.2d at 76 (quoting *United States v. Dinitz,* 424 U.S. 600, 609, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267, 275 (1976)).

In the case of a criminal defendant who otherwise successfully obtains a termination of the trial in his or her favor before a determination of guilt or innocence, a different analysis is applied and a different result may obtain. The trial judge who grants a motion such as this clearly contemplates that the instant proceeding will terminate then and there in favor of the defendant. *Scott,* 437 U.S. at 94, 98 S.Ct. at 2195, 57 L.Ed.2d at 76. The prosecution in such a matter will be forced to seek reversal on appeal. *Id.* The Supreme Court has held, however, that when a criminal defendant deliberately seeks such a termination on a basis unrelated to factual guilt or innocence, double jeopardy principles do not prevent the State from appealing that termination. *Scott,* 437 U.S. at 101, 98 S.Ct. at 2199, 57 L.Ed.2d at 80. This Court likewise stated in *Parks,* a case where the criminal defendant moved successfully to dismiss the case due to the State's failure to comply

with statutory time strictures, that "the defendant cannot by his own act avoid the jeopardy in which he stands and then assert it as a bar to a subsequent jeopardy." 287 Md. at 19, 410 A.2d at 602.

The third common law double jeopardy principle is the plea of *autrefois acquit.*

It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, *the verdict of acquittal can never afterward, in any form of proceeding, be set aside and a new trial granted, and it matters not whether such verdict be the result of a misdirection of the judge on a question of law,* or of a misconception of fact on the part of the jury.

*State v. Shields,* 49 Md. 301, 303 (1878) (emphasis added). This plea has been interpreted broadly. A verdict of "not guilty" invokes the protection against double jeopardy such that procedural errors or acquittals entered on a fatally defective indictment bar subsequent prosecution. *Farrell v. State,* 364 Md. 499, 509, 774 A.2d 387, 393 (2001) (holding that procedural errors do not affect the efficacy of an acquittal for jeopardy purposes and that the "not guilty" verdict need not be followed by entry of the judgment on the docket to bar subsequent prosecution); *Brooks v. State,* 299 Md. 146, 155, 472 A.2d 981, 986 (1984) (holding that the common law prohibition against double jeopardy barred the trial judge from granting a motion of acquittal and subsequently reversing himself to allow the charge to go to the jury even if the grant of the motion was error); *Block v. State,* 286 Md. 266, 272, 407 A.2d 320, 324 (1979) (finding that the improper or defective exercise of jurisdiction does not deprive an acquittal of its finality for double jeopardy purposes).

Two cases particularly illuminate Maryland's common law double jeopardy jurisprudence: *Pugh v. State* and *Farrell v. State.* These cases demonstrate the finality accorded acquittals pursuant to our common law tradition. The trial judge in *Pugh* delivered an oral resume of the evidence before him in a

bench trial involving narcotics possession violations [charges 2110 and 2111] and thereafter pronounced the defendant "not guilty" of the indictment. *Pugh,* 271 Md. at 704, 319 A.2d at 543. Immediately afterward, the judge had the following conversation with the prosecutor:

> PROSECUTOR: 2111 would be the distribution charge. That's what the State is pressing in this case.
>
> THE COURT: I would be glad to hear from you.
>
> PROSECUTOR: I believe that we have evidence, ample evidence of sale. That's exactly what the State is going after. This man is a distributor of cocaine, and on the night of the 18th of February—
>
> THE COURT: I see what you mean.
>
> PROSECUTOR:—he made a sale.
>
> THE COURT: I was thinking of it in a different way. So, the verdict is guilty of 2111, because it was an actual sale. What I was thinking of was the possession in quantity to indicate distribution. . . .

*Id.,* 319 A.2d at 543–44. The trial judge then reversed his earlier ruling and sentenced the defendant to twelve years imprisonment. The defendant argued on appeal that he had been put twice in jeopardy and therefore the subsequent sentence could not stand. *Id.,* 319 A.2d at 544. The Court of Special Appeals affirmed the judgment, but this Court reversed. Noting that "one particular aspect of the prohibition against double jeopardy has not engendered any difficulties in application or diverse opinions," we stated that it has always been clear "that once a verdict of not guilty has been rendered at the conclusion of a criminal trial, that verdict is final and cannot be set aside." *Pugh,* 271 Md. at 705, 319 A.2d at 544. We acknowledged in *Pugh* that where a judge "obviously inadvertently" says one thing when he means another, and immediately thereafter corrects himself, the mis-spoken verdict may not stand. 271 Md. at 706, 319 A.2d at 545. Stating that "it ma[kes] no difference whether the acquittal [is] based on a mistake of law or a mistake of fact," we held that when a trial judge "intentionally renders a verdict of 'not guilty' on a criminal charge, the prohibition against double jeopardy does

not permit him to change his mind." *Pugh*, 271 Md. at 707, 319 A.2d at 544–45.

*Farrell v. State* involved a defendant who was charged with speeding and negligent driving citations. He appeared for trial and entered a plea of "not guilty." The State failed to produce any witnesses and the trial judge found defendant "not guilty," and entered judgment to that effect. *Farrell*, 364 Md. at 501, 774 A.2d at 388. After twenty-eight days had passed, the State filed an identical set of charges against defendant by criminal information. Farrell moved to dismiss the new charges arguing that his right against double jeopardy was being violated. *Farrell*, 364 Md. at 502, 774 A.2d at 388. At the hearing on the motion to dismiss the State argued that, although the earlier verdict of "not guilty" had been rendered on identical charges, the failure to produce witnesses was justified, and therefore jeopardy should not have attached. The District Court held that the new set of charges must be dismissed on double jeopardy grounds. *Farrell*, 364 Md. at 502–03, 774 A.2d at 389. After the Circuit Court reversed the District Court's judgment, this Court considered the case. We held, following Maryland common law precedent, that the District Court in the first instance had jurisdiction over the offenses and over the defendant, and the verdicts were rendered intentionally by the trial judge. Therefore, the acquittals were final and the State was precluded by double jeopardy principles from bringing a new prosecution charging the same offenses. *Farrell*, 364 Md. at 510, 774 A.2d at 393. In so holding, we pointed out that "whether jeopardy has attached, in the sense of the presentation of evidence or the swearing of witnesses, has no relevance to the finality of an acquittal under common law principles." *Farrell*, 364 Md. at 509, 774 A.2d at 393; *Daff v. State*, 317 Md. 678, 687–88, 566 A.2d 120, 125 (1989).

### III.

#### A.

Petitioners Bledsoe, Kopp, and Johnson argue that the Circuit Court's remand of their cases to the District Court for

further proceedings violates their federal constitutional and Maryland common law double jeopardy rights. Petitioners claim that because the District Court judge considered and relied on the agreed statement of facts when considering the motion to dismiss, double jeopardy protections were engaged when he dismissed the cases. Double jeopardy principles, therefore, prohibited the Circuit Court from hearing an appeal of that decision. Petitioners rely on *Finch v. United States*, 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977), to support their argument. In that case, Finch filed a motion to dismiss the indictment against him for knowingly fishing on a portion of a river reserved exclusively for use by the Crow Indians. The court initially denied the motion, but later granted it after considering an agreed statement of facts and memoranda of law. The Supreme Court found that "[w]hen the District Court dismissed the information, jeopardy had attached." *Finch*, 433 U.S. at 677, 97 S.Ct. at 2910, 53 L.Ed.2d at 1051. The Supreme Court held that "because the dismissal was granted prior to any declaration of guilt or innocence, 'on the ground, correct or not, that the defendant simply cannot be convicted of the offense charged,' we hold that the Government's appeal was barred by the Double Jeopardy Clause." *Finch*, 433 U.S. at 676, 97 S.Ct. at 2909, 53 L.Ed.2d at 1050.

Petitioners further argue that jeopardy attached as soon as the trial judge considered facts sufficient to permit a finding of guilt if viewed in a light most favorable to the prosecution. Petitioners contend that double jeopardy estoppel forecloses the State's Circuit Court appeal because, regardless of whether the District Court judge's ruling was correct, the State had no other operative facts to submit. Petitioners point to a case decided by the Court of Special Appeals, *State v. Despertt*, 73 Md.App. 620, 535 A.2d 963 (1988), to bolster this argument. The trial judge in *Despertt* entered a verdict of acquittal after the prosecutor's opening statement and after viewing several photographs the prosecution planned to submit as evidence at trial. The Court of Special Appeals held that jeopardy prevented the State's appeal because the acquittal was not based solely on the opening statement when the judge, "albeit ever

so informal[ly]," evaluated the proffered photographs before entering a judgment of acquittal. *Despertt,* 73 Md.App. at 626, 535 A.2d at 965.

## B.

The Appellee in *State v. Taylor* asks us to conclude that, although the trial judge's ruling was styled as granting a motion to dismiss, her disposition amounted to an acquittal based on insufficiency of the evidence and, as such, the double jeopardy principles embodied in the Fifth Amendment to the United States Constitution and Maryland common law preclude the State from appealing the ruling.

Taylor points out that this Court has recognized that it is the *substance* of a trial court ruling and not its *form* that determines its significance in such an analytical context. Appellee cites several federal and Maryland cases where appellate courts have looked beyond the label the trial judge gave a ruling and scrutinized those rulings according to their substance.[13] *Scott,* 437 U.S. at 97, 98 S.Ct. at 2187, 57 L.Ed.2d at 78 (holding that "[a] defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor] correct or not, of some or all of the factual elements of the offense charged'") (quoting *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642, 650–51 (1977)); *United States v. Jorn,* 400 U.S. 470, 478 n. 7, 91 S.Ct. 547, 553 n. 7, 27 L.Ed.2d 543, 552 n. 7 (1971) (recognizing that "the trial judge's characterization of his own action cannot control the classification of the action"); *Wright v. State,* 307 Md. 552, 569–70, 515 A.2d 1157, 1166 (1986) (stating that "in determining the applicability of the double jeopardy prohibition in a particular situation, a court must primarily examine the substance of what occurred and not simply the procedural form"); *Parojinog v. State,* 282 Md. 256, 263, 384 A.2d 86, 90–91 (1978)

---

**13.** Although we shall not enumerate the entire litany of cases cited by Appellee, the essential federal and Maryland state authorities will be listed *infra.*

(finding that although a hearing may have been styled as a "waiver hearing," when adjudication and disposition occurred at that hearing, the nature of the hearing was no longer that of a waiver hearing, and therefore would not be treated as such on appeal).

Taylor submits that because the Circuit Court judge heard and ruled on the statement of facts presented at the motions hearing, the hearing amounted to a trial of the general issue and not of the legal sufficiency of the charging document on its face. The court heard evidence and arguments regarding whether Appellee's conversations over the internet constituted "notice, statement, advertisement or other information" pursuant to § 419A. Appellee contends that the court explicitly ruled on this evidence by holding that

[t]he allegation as to the offense which everybody agrees is on page five [of the confidential memorandum] which is in fact what the conversation was, is not in any means, by way of a computer to publish or disseminate notice, statement or advertisement of minor's name, ... etcetera for the purpose of engaging, facilitating, encouraging, offering or soliciting unlawful sexual conduct.... It appears to be just a conversation that was held and not what is forbidden by the statute.

Based on the hearing and its outcome, Appellee asks this Court to raise substance over form and conclude that, in granting the motion to dismiss, the trial judge actually was granting an acquittal.

As Taylor's argument continues, because the Circuit Court's ruling was an acquittal, it can not be reviewed on appeal due to double jeopardy principles. Appellee criticizes the State's characterization of *Serfass* as the dispositive case that "specifically repudiate[s] the notion that the pre-trial consideration of evidentiary facts constitute[s] an acquittal." Although the issue in *Serfass* was whether the grant of a pretrial motion to dismiss could be reviewed under federal double jeopardy principles, Appellee argues that *Serfass* does not apply to the case at bar. Appellee distinguishes *Serfass* on the basis that

the indictment in *Serfass* "was dismissed for reasons wholly unrelated to a resolution, in the defendant's favor, of the factual elements of the crime." According to Taylor, dismissal of the case in *Serfass* resulted from the failure to provide due process, not because Serfass was tried and found "not guilty" of the elements of the crime. The case at bar, he submits, involved an acquittal on the merits, and therefore jeopardy attached. Although the hearing ostensibly began as a hearing on a motion to dismiss, it transformed into a bench trial upon introduction and consideration of the facts contained in the police memorandum. Appellee particularly stresses that the State agreed that the facts in the memorandum constituted the evidence in the case, and that the court relied on the facts in the memorandum to conclude that the evidence did not support the charges.

Like Petitioners in *Bledsoe,* Taylor draws a parallel between the scenario in *Finch* and the development of the case before us. Appellee also relies on *Daff* to support the argument that even though he had not yet waived his right to a jury trial, "this is a procedural deficiency, about which the defendant might have complained, but it does not affect the finality of the acquittal thereafter entered by a judge having jurisdiction over the matter." *Daff,* 317 Md. at 685, 566 A.2d at 123.

## C.

The State of Maryland, in *Bledsoe* and *Taylor,* retorts that the initial dismissals of the charging documents in each case were improper and double jeopardy principles do not bar further proceedings. To support its position, the State musters much of the same authorities in both cases. The State contends that trials, with attendant motions for judgment of acquittal, were the appropriate vehicles for raising and deciding the factual issues disposed of in the motions to dismiss. Therefore, the trial judges erred when they dismissed the charging documents for the reasons they gave.

With regard to the trial court proceedings in *Bledsoe,* the State directs our attention to a statement in *Divver v. State,*

356 Md. 379, 385, 739 A.2d 71, 74 (1999), that "[a] motions practice in the District Court is permitted under Maryland Rule 4–251(a)," and then to subsection (b) of that rule providing that motions alleging defects in the charging document should be determined before trial while other motions are "to be determined at any appropriate time." [14] Relying on these provisions, the State contends that the District Court judge in *Bledsoe*, and the Circuit Court judge in *Taylor*, erred when they dismissed the charging documents rather than defer such factual determinations until trial of the general issue. The State points to several cases in other jurisdictions to support "this common sense proposition." *See, e.g., U.S. v. King*, 581 F.2d 800, 801–02 (10th Cir.1978) (holding that a motion to dismiss was improperly granted when the trial court considered evidence beyond the charging document); *Ohio v. Tipton*, 135 Ohio App.3d 227, 733 N.E.2d 634, 635–36 (1999) (holding that the trial court erred when granting a motion to dismiss based on evidence beyond the face of the indictment).

Foremost among these cases, in the State's view, is *United States v. DeLaurentis*, 230 F.3d 659 (3d Cir.2000). In that case the Government appealed from the dismissal of a criminal indictment. The district court had dismissed the indictment because it found that the Government's evidence did not show a sufficient nexus between the alleged bribes and any federal interest or program. *DeLaurentis*, 230 F.3d at 660. The Third Circuit held that while the Federal Rules permit dismissal if the allegations of a charging document do not charge an offense, such dismissal may not be based on the insufficiency of evidence to prove the allegations in the indictment. *DeLaurentis*, 230 F.3d at 661. The court noted that there is no criminal equivalent to the motion for summary judgment in civil cases, and therefore the Government should be entitled

---

**14.** The State argues that this interpretation of the requirements of Maryland Rule 4–252(a)(1) and (a)(2) also applies to the proceedings in the Circuit Court in *Taylor*. The State argues that the appropriate method of testing the factual issues in *Taylor* that ultimately were addressed by the motion to dismiss was via motion for judgment of acquittal.

"to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal." *Id.* The State argues that, following the reasoning in *DeLaurentis,* we should find that the District Court's ruling in *Bledsoe* and the Circuit Court's ruling in *Taylor* went to matters of proof that should have been determined after trials, and therefore the judgments below should be reversed as they were entered without authority.

The State also relies on *United States v. King* to support its argument that the trial judge in *Taylor* erroneously considered evidence beyond the face of the indictment to grant the motion to dismiss. The State's reliance on this case, however, is misguided. *King* involved the pretrial dismissal of criminal informations. The defendants in that case moved for dismissal of the informations on the grounds that their conduct did not constitute a violation of the statutes charged. *King,* 581 F.2d at 801. Although no evidence was introduced formally at the motions hearing, defendants' counsel explained the background of the cases to the judge.[15] On the basis of that factual presentation, which facts defendants claimed were uncontested and the Government claimed were disputed, the court granted their motion to dismiss. *Id.* On appeal, the Tenth Circuit noted that "an information or indictment may be dismissed if it is insufficient to charge an offense," however, "it may not be properly challenged by a pretrial motion on the ground that it is not supported by adequate evidence." *King,* 581 F.2d at 802. Although the extrinsic facts considered by the trial court were "irrelevant to a determination of whether

---

**15.** Appellee presented the following factual synopsis to that court:

"King [appellee] is a cattle rancher. He has, for some years, obtained permits to trail his cattle between summer and winter pastures across what is known as Old Creek Trail, which traverses the Capitol Reef National Park. In April, 1976, prior to trailing his cattle, he inspected the trail and discovered it was not passable. King contracted with Jackson to bulldoze the obstructed portion of the trail. King forwarded Jackson's bill to the Bureau of Land Management with a request for payment. The Bureau indicated it could not pay the bill, and in turn, forwarded it to the National Park Service, whereupon the petty offense information was filed."

*U.S. v. King,* 581 F.2d 800, 801 (10th Cir.1978).

the indictment itself is legally sufficient," the Tenth Circuit held that the dismissal was, in effect, a determination of guilt because the judge considered the defendants' conduct to determine that their conduct did not constitute the violation charged. *Id.* The appellate court then stated that it would not opine as to the outcome should the Government elect to proceed with prosecution of the matter. Therefore, it appears that this case contradicts the State's position here in that the Tenth Circuit found the grant of the motion to dismiss to be a determination of guilt/innocence.

Additionally, the State argues that it would not violate double jeopardy to remand *Bledsoe* for retrial in the District Court or hear *Taylor* on appeal from the Circuit Court because jeopardy never attached. The State implies that because the rulings were based improperly on evidence extrinsic to the charging documents, the trial courts may not be said actually to have ruled on the sufficiency of the evidence against Petitioners and Appellee. To support its argument and to rebut Petitioners' and Appellee's reliance on *Finch,* the State turns to *Serfass.* Serfass was indicted for wilfully failing to report for and submit to induction into the armed forces. He filed a pretrial motion to dismiss the indictment arguing that the local draft board improperly refused to reopen his case. Appended to his motion was an affidavit relating that Serfass had applied for conscientious objector status. He eventually was directed by the district court to submit a copy of his Selective Service case file. *Serfass,* 420 U.S. at 379, 95 S.Ct. at 1058, 43 L.Ed.2d at 269. The court dismissed the indictment on the basis of the affidavit, the Selective Service case file, and oral stipulations made by counsel at a hearing. 420 U.S. at 380, 95 S.Ct. at 1058, 43 L.Ed.2d at 269. The Supreme Court reasoned that the appeal of the grant of the motion to dismiss was not barred by the Double Jeopardy Clause because jeopardy had not attached at the time of the dismissal, and Serfass had not been "put to trial before the trier of facts." *Serfass,* 420 U.S. at 389, 95 S.Ct. at 1063, 43 L.Ed.2d at 274. The State specifically draws our attention to the fact that the Supreme Court repudiated

the notion that the pretrial consideration of evidentiary facts constituted an acquittal. Drawing an analogy between the present cases and *Serfass,* the State asks us to rule likewise.

The State further contends that Maryland common law requires the same result as reached in *Serfass* in its application of federal constitutional principles. It distinguishes the facts of *Bledsoe* and *Taylor* from *Daff v. State* in making this argument. Briefly stated, Daff appeared for trial on the scheduled date, *Daff,* 317 Md. at 681, 566 A.2d at 121, but the prosecutor requested a postponement because the State's witnesses were not present. The trial judge denied the request. Daff entered a plea of "not guilty," after the prosecutor refused to enter a *nolle prosequi* in the matter. *Daff,* 317 Md. at 682, 566 A.2d at 122. The trial judge entered a finding of "not guilty" on the basis that the State's witnesses had not appeared for trial. On appeal, this Court concluded that the common law of double jeopardy barred retrial. *Daff,* 317 Md. at 689–90, 566 A.2d at 125–26.

The State finds meaningful that the defendant in *Daff* appeared for trial, a trial was held, and the State was afforded an opportunity to produce its evidence, though it failed or refused to put on any evidence. The instant cases are inapposite, the State argues, because Petitioners and Appellee appeared for pretrial hearings rather than for trial, the State was not expected to adduce evidence of guilt at either hearing, and the trial judges entered dismissals of the charging documents rather than express findings of "not guilty" as in *Daff.*

Finally, the State argues that ruling in favor of Petitioners and Appellee in these cases would have dramatic ramifications for criminal trials throughout the State because trial courts would be reluctant to rule on pretrial motions to dismiss for fear that such rulings would have unintended or unforeseeable double jeopardy implications.

## IV.

We decline to reach the constitutional issues raised in the present cases because we shall decide the cases solely on

Maryland common law double jeopardy grounds. *See Farrell,* 364 Md. at 506, 774 A.2d at 391 (stating that this Court "will not decide a constitutional issue when a case can properly be decided on a non-constitutional ground").

By considering the facts contained in the police memorandum, the Circuit Court in *Taylor* erred by rendering a decision on the sufficiency of the evidence when it should have limited itself to considering the legal sufficiency of the indictment on its face. The District Court in *Bledsoe* likewise erred in considering facts extrinsic to the charging document in granting the motion to dismiss. In both *Taylor* and *Bledsoe,* the trial judges exceeded the permissible scope of a motion to dismiss in a criminal case in our state courts. Despite the judges' reasoning exceeding the scope of a motion to dismiss, the grant of those motions substantively constituted judgments of acquittal and therefore must be given effect as such for jeopardy purposes. We hold that jeopardy attached to the ruling made by the District Court judge in *Bledsoe;* therefore, the State's appeal to the Circuit Court was barred and its judgment must be reversed. We also hold that jeopardy attached to the Circuit Court's dismissal in *Taylor* and the State may not appeal that decision.

## A.

We begin by addressing the nature of a motion to dismiss in a criminal case. In Maryland, a motion to dismiss in the Circuit Court is governed by Maryland Rule 4–252.[16] Under the Rule, "defenses and objections to an indictment that once were raised by demurrers, motions to quash, pleas in abatement, and certain other pleas, are now raised by motions to dismiss." [17] *State v. Bailey,* 289 Md. 143, 149, 422 A.2d 1021, 1025 (1980). Section (d) of the Rule provides that

---

16. As argued by the State in *Bledsoe,* Md. Rule 4–252 also has been applied to the District Court.

17. The same is true in the federal courts. *See* Fed.R.Crim.P. 12 and commentary (noting that demurrers, pleas in abatement, etc., have been abolished).

[a] motion asserting failure of the charging document to show jurisdiction in the court or to charge an offense may be raised and determined at any time. Any other defense, objection, or request capable of determination before trial without trial of the general issue, shall be raised by motion filed at any time before trial.

A motion to dismiss the charges in an indictment or criminal information is not directed to the sufficiency of the evidence, *i.e.*, the quality or quantity of the evidence that the State may produce at trial, but instead tests the legal sufficiency of the indictment on its face. In discussing the function and role of a motion to dismiss in our modern system of criminal justice, this Court said:

In sum, a motion to dismiss the indictment will properly lie where there is some substantial defect on the face of the indictment, or in the indictment procedure, or where there is some specific statutory requirement pertaining to the indictment procedure which has not been followed. In the absence of statutory authority to the contrary, where the object of appellate review of a dismissal is to test a pre-trial ruling of the court dealing with the admissibility of evidence, appellate review of such pretrial ruling should be denied. *This is so because the motion to dismiss attacks the sufficiency of the indictment, not the sufficiency of the evidence.*

*Bailey,* 289 Md. at 150, 422 A.2d at 1025 (emphasis added).

█ A pretrial motion to dismiss an indictment or information may not be predicated on insufficiency of the State's evidence because such an analysis necessarily requires consideration of the general issue. Thus, where there are factual issues involved, a motion to dismiss on the grounds that the State's proof would fail is improper. This is so even when the question of subject matter jurisdiction is co-mingled with questions going to the merits. In criminal cases in this State, in contrast to civil actions, there is nothing comparable to a motion for summary judgment. In a civil case, the trial court is permitted, in its discretion, to treat a motion to dismiss as a motion for summary judgment. *See* Maryland Rule 2–3222(c)

(providing that when matters outside the pleadings are presented to the court and not excluded by the court on a motion to dismiss for failure to state claim upon which relief may be granted, the motion shall be treated as a motion for summary judgment). There is simply no such analogue in criminal cases.

A similar issue arose in *Ohio v. Tipton*, 135 Ohio App.3d 227, 733 N.E.2d 634 (1999), where the State of Ohio challenged on appeal the trial court's grant of a defendant's pretrial motion to dismiss an indictment. The Ohio intermediate appellate court agreed with the State's argument that it was improper for the trial court to look beyond the face of the indictment to determine whether a motion to dismiss should be granted. The court noted that "[w]hen a defendant in a criminal action files a motion to dismiss which goes beyond the face of the indictment, he is, essentially, moving for summary judgment." *Tipton*, 733 N.E.2d at 635. In holding that the trial court erred in dismissing the charges, the court said:

The Ohio Rules of Criminal Procedure, however, do not allow for "summary judgment" on an indictment prior to trial. Since [the defendant's] claim went beyond the face of the indictment, he could present his challenge only as a motion for acquittal at the close of the state's case. As a general rule, "premature declarations," such as those presented [in a pretrial motion to dismiss], are strictly advisory and an improper exercise of judicial authority.

*Id.* (internal citations omitted).

The issue of the propriety of a trial court's failure to dismiss an indictment pretrial was raised in *Ohio v. Patterson*, 63 Ohio App.3d 91, 577 N.E.2d 1165 (1989). Observing that a motion to dismiss the charges tests the sufficiency of the indictment and not the quantity or quality of the evidence that may be produced by the state or the defendant, that court said:

Although both parties argued Patterson's motion to dismiss the charges against her from the standpoint of the evidentiary material submitted by her in support of her motion, and although the trial court considered that evidentiary

material in overruling her motion, we conclude that it was not proper for the trial court to do so. The proper determination was whether the allegations contained in the indictment made out offenses under Ohio criminal law. If they did, it was premature to determine, in advance of trial, whether the state could satisfy its burden of proof with respect to those charges.

577 N.E.2d at 1166.

This same construction of the function of a motion to dismiss exists under the Federal Rules of Procedure. In *United States v. Ayarza–Garcia,* 819 F.2d 1043 (11th Cir. 1987), the Court of Appeals for the Eleventh Circuit rejected appellant's claim that the trial court erred in denying his motion to dismiss for lack of subject matter jurisdiction. *Ayarza–Garcia,* at 1048. The court noted that FED.R.CRIM.P. 12(b) provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." *Id.* "General issue" has been defined "as evidence relevant to the question of guilt or innocence." *Id.* The Court held as follows:

[A] pretrial motion to dismiss the indictment cannot be based on a sufficiency of the evidence argument because such an argument raises factual questions embraced in the general issue. Rule 12 is not intended to authorize "speaking motions" through which the truth of the allegations in an indictment are challenged. Thus, when a question of federal subject matter jurisdiction is intermeshed with questions going to the merits, the issue should be determined at trial. Therefore, because Appellant's jurisdictional challenge was a challenge to the sufficiency of the government's evidence which would have involved determination of issues of fact going to the merits of the case, the district court did not err in determining that the resolution of the jurisdictional question by pretrial motion to dismiss was not appropriate for this case.

*Id.* (citations omitted).

■ In both *Taylor* and *Bledsoe,* the trial courts erred in granting the motions to dismiss for the evidentiary insufficien-

cy reasons given by the trial judges. In *Taylor*, Counts I, II, and III of the criminal information charging child pornography in violation of Article 27, Section 419A set forth a legally cognizable crime in Maryland. Count IV charging attempted third degree sexual offense and Count V charging attempted second degree assault also set forth legally cognizable crimes in Maryland. Contrary to Taylor's argument, the charging document did not fail to show jurisdiction in the court or fail to charge an offense on its face. Although Taylor is correct that a claim that a charging document fails to charge an offense is jurisdictional and may be raised at any time-pretrial, during trial, or even for the first time on appeal-in the instant case he is simply wrong that the trial court lacked subject matter jurisdiction as a matter of law.

 The District Court judge in *Bledsoe* likewise erred by dismissing the criminal indictment. Whether the Petitioners' conduct occurred in a public place embraced by the Ordinance and whether the Ordinance unconstitutionally violated the First Amendment of the United States Constitution are questions that required consideration of evidence extrinsic to the indictment. Petitioners' argument that the criminal information cannot stand because there has been no violation of the Ordinance is a matter going to the general issue of the case, one which should have been determined at trial.

### B.

 Concluding that the trial courts erred procedurally does not end our analysis. Although cloaked in the form of the grant of motions to dismiss, the substance of the trial judges' rulings was to grant judgments of acquittal and so must we treat them for double jeopardy analysis. Appellee's and Petitioners' successful arguments below were predicated on factual bases beyond the four corners of the charging documents. Determining the quality and quantum of the evidence is tantamount to trial of the general issue, and as such, dismissal of a criminal information or indictment based

on an assessment of the sufficiency of the evidence is tantamount to an acquittal.

This Court's decisions in *Block* and *Parojinog* underscore the importance of looking behind form and instead evaluating the trial court's actions in terms of its substance for jeopardy purposes. *Parojinog* considered whether the State's prosecution of the defendant for arson and conspiracy to commit arson, following a juvenile proceedings based on the same offenses, violated double jeopardy principles when the juvenile proceeding resulted in an order for the defendant to pay restitution and to undergo therapy. 282 Md. at 257, 384 A.2d at 87. The District Court, sitting as a juvenile court, heard evidence on the State's motion to waive juvenile jurisdiction. As a result of that proceeding, without ruling on the waiver issue, the judge directed the defendant to undergo a program of full-time therapy and to pay restitution. At a subsequent hearing, the District Court signed an order waiving juvenile jurisdiction, at which point a twenty-eight count criminal indictment, alleging the same acts, was filed against the defendant in the Circuit Court. *Parojinog,* 282 Md. at 258–59, 384 A.2d at 87–88. The defendant filed a motion to dismiss the charges against him in the Circuit Court, but it was denied. On appeal to the Court of Special Appeals, the defendant argued that the order directing him to pay restitution and undergo full-time psychiatric treatment was equivalent to an adjudication of guilt and trial in the circuit court therefore would be double jeopardy. *Id.* The Court of Special Appeals affirmed the Circuit Court's denial of defendant's motion to dismiss. This Court held that the defendant was put in jeopardy by the actions of the juvenile court such that prosecuting him as an adult in circuit court would subject him to successive prosecution in violation of double jeopardy protections. *Parojinog,* 282 Md. at 265, 384 A.2d at 91. We found it to be of no importance that the juvenile hearing was styled a "waiver" hearing and not an "adjudicatory" hearing. *Id. Parojinog* stands for the proposition that even though it was improper for the judge to rule on the merits of the case in the context of a waiver hearing, the verdict nonetheless was final for jeopardy purposes.

We employed similar reasoning in *Block v. State*. There, the defendant was charged with shoplifting and was found guilty by the District Court judge. Eleven days after the verdict was rendered, the defendant filed a motion for reconsideration. The trial judge granted the motion and rendered a new verdict of "not guilty." Upon motion by the prosecution to set aside the not guilty verdict and reinstate the guilty verdict, the trial judge struck the not guilty verdict and ordered a new trial. *Block*, 286 Md. at 267–68, 407 A.2d at 321. After the Circuit Court denied defendant's motion to bar the new trial on double jeopardy grounds, defendant filed a petition for certiorari to this Court which we granted. *Block*, 286 Md. at 268, 407 A.2d at 321. We reversed the Circuit Court and held that a new trial of the defendant for the same offense would violate the double jeopardy prohibition. *Id.* We rejected the State's argument that the District Court was without jurisdiction to revise the guilty verdict because a statutory three-day period in which a verdict may be revised had lapsed before the defendant's motion for reconsideration was filed. Instead, we emphasized that "jurisdiction" for double jeopardy analysis means jurisdiction in a most basic sense. Merely because there was an error in the exercise of jurisdiction did not mean that the court proceedings were a nullity. *Block*, 286 Md. at 270, 407 A.2d at 322. An acquittal, whether rendered erroneously or not, has binding effect for double jeopardy purposes. *Block*, 286 Md. at 272, 407 A.2d at 323–24. We held that "the fact that the court may not have been authorized under the rules to render the verdict does not make it void for double jeopardy purposes." *Block*, 286 Md. at 273, 407 A.2d at 324.

These cases make apparent that even though the form or timing of a trial court action may be erroneous, it is the substance of the action that is determinative for jeopardy analysis. As in *Parojinog* and *Block*, it was error here for the trial judges to reach the merits of guilt/innocence when deciding the respective motions to dismiss. Their actions, however, were tantamount to acquittals of the charges and therefore

final dispositions of the respective matters for jeopardy purposes.

The function of a motion for judgment of acquittal is clearly distinguishable from the function of a motion to dismiss. While a motion to dismiss is intended to evaluate the sufficiency of the charges, the grant of an acquittal has the same effects and consequences as the return of a verdict of "not guilty" by the trier of fact. The basic premise of the common law plea of *autrefois acquit* is that

> no man is to be brought into jeopardy of his life more than once for the same offence. And hence it is allowed as a consequence, that when a man is once fairly found not guilty upon any indictment or other prosecution, before any court having competent jurisdiction of the offence, he may plead such acquittal in bar of any subsequent accusation for that same crime.

*Daff,* 317 Md. at 684, 566 A.2d at 123. This Court also has stated

> [i]n determining the disposition of a motion for judgment of acquittal, however, *the trial court is passing upon the sufficiency of the evidence to sustain a conviction.* If the trial judge finds any relevant evidence which is legally sufficient to sustain a conviction, he must deny the motion for judgment of acquittal and allow the evidence to go before the trier of fact.

*Brooks,* 299 Md. at 150–51, 472 A.2d at 983 (emphasis added) (internal citations omitted). Thus, the analysis leading to an acquittal involves weighing the State's evidence in an attempt to determine whether it is sufficient to support a conviction.[18] That is exactly the analysis engaged in by each trial judge in these cases.

---

18. *See* Maryland Rule 4–324(a) stating,

> A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment of acquittal shall

The District Court judge in *Bledsoe* and the Circuit Court judge in *Taylor*, although inappropriately, evaluated the sufficiency of the evidence placed before them in granting the motions to dismiss. The stipulation of facts made during Petitioners' motions hearing in *Bledsoe* provided the District Court judge with sufficient evidence to make findings going to the general issue of the case, although he should not have solicited such factual stipulations nor predicated his grant of the motion upon findings based on those facts. In ruling on the motions, he did not hold that the criminal informations had substantial defects on their faces, or defects in the indictment procedure followed by the State. Rather, he held, based on the evidence placed before him by the parties, that the Showcase was not a public place within the meaning of the statute, and that the Ordinance was unconstitutional as applied to the facts. In his oral opinion, the judge explicitly stated that the Showcase "is not of the same kind and character as those [establishments] listed in the statute, *to sustain a criminal prosecution* for violation of the statute." (Emphasis added). After disposing of the statutory interpretation arguments, he acknowledged that "it would be sufficient for this ruling on this case and on the defendant's motion, to stop [the inquiry] at that point." He continued, however, by stating "[b]ut because substantial constitutional issues have been ... raised in this case, we find it necessary to address those issues as well." He therefore opined that "the [State] had made no showing that first amendment activity could be constitutionally curtailed" in this case.

The explanation of his ruling clearly indicates that he ruled on the general issues of the cases rather than on the legal sufficiency of the criminal informations. By ruling on the merits of the cases to determine that there were no grounds "to sustain a criminal prosecution," the judge in actuality granted acquittals. The judge's determinations were based on

be necessary. A defendant does not waive the right to make the motion by introducing evidence during the presentation of the State's case.

the sufficiency of the evidence such that institution of new proceedings would necessitate a second resolution of the facts. This cuts to the very heart of double jeopardy protection.

The Circuit Court judge in *Taylor* also overstepped the limitations of ruling on a motion to dismiss by predicating her conclusion on an analysis of the facts extrinsic to the four corners of the criminal information, as represented in Taylor's Exhibit Number 1. Instead of limiting her consideration to the narrow purview of the criminal information, she granted the motion by deciding the substantive issues of the case. She dismissed the three child pornography charges because she concluded that the facts showed that the e-mail conversations did not violate the statute. She also specifically relied on the evidence to dismiss the attempt charges.[19] She dismissed those charges on two grounds: first, the charges alleged a crime involving a minor, but the facts alleged were that an adult was involved rather than a minor and therefore it was impossible as a matter of law for Appellee to commit the offenses charged;[20] and second, Taylor's conduct was mere preparation and did not constitute a substantial step towards the commission of the crime. These findings go to the general issues of the case and not to potential flaws discerned from the face of the criminal information or its obtention. The judge substantively held that Taylor was not guilty of the crimes charged, and therefore effectively granted a judgment of acquittal.[21]

---

**19.** The judge made numerous references in her oral opinion to facts contained in Defendant's Exhibit Number 1, and clearly relied on the memorandum in deciding to grant the motion to dismiss. She explicitly mentioned page 5 of the memorandum four times when ruling on counts I III.

**20.** The judge engaged in an indepth analysis of the legal impossibility defense. Relying on a number of cases, she noted that "when criminal intent is unaccompanied by a criminal act, it is not punishable," concluding that Taylor could not be guilty of the attempt charges.

**21.** Because our analysis does not require us to do so, we express no views on the correctness *vel non* of either trial courts' substantive reasoning or the pertinent statutes.

Therefore, although we agree with the State's argument that granting the motions to dismiss based on evidence extrinsic to the charging documents was improper, we conclude that those rulings nonetheless were the equivalent of granting acquittals, and must be treated as such for jeopardy purposes. As acquittals, the trial judges rendered final judgments, the appeal from which or retrial, as discussed *supra*, would be a violation of Petitioners' and Appellee's protections against double jeopardy under Maryland common law.

*IN NO. 124, JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. IN NO. 6, JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE STATE'S APPEAL. COSTS TO BE PAID BY FREDERICK COUNTY AND PRINCE GEORGE'S COUNTY, RESPECTIVELY.*

Dissenting Opinion by CATHELL, J., in which RAKER and WILNER, JJ. join

I respectfully dissent.

In spite of the majority's extensive discussion of double jeopardy principles and cases, which appear to make the issue presented more complex than it is, the issue before the Court is relatively simple. Is a hearing on a motion to dismiss a hearing on the merits? Apparently, the majority considers it to be so in respect to Maryland common law double jeopardy principles. I disagree.

The majority's opinion is a wake up call for trial court judges. Additionally, and more importantly, the majority today takes a potentially dangerous step in the area of criminal law and may be, in essence, placing an additional burden on the State to try many criminal cases twice. In the process, witnesses, including police officers and other persons connected with the criminal justice system who could better serve the public by being on the street, or wherever, performing as-

signed functions may be required to come to court twice,[1] where formerly they, generally, only had to come once.[2] From this point on, all a defendant need do is file a motion to dismiss, attach a statement of charges, move an affidavit relating to evidence, or any document with evidentiary matter contained in it into evidence at a pre-trial hearing or file a premature motion for a judgment of acquittal. If that happens the State may be in the unenviable position of having to present facts sufficient to convict, because if it does not do so and the hearing court chooses to require additional factual information, as the trial court did in the case at bar, and then grants the motion to dismiss based in whole or part on a factual matter, the State will not be able to appeal that decision because of the double jeopardy holding rendered in this case. This is in spite of the provisions granting the State the right to make such an appeal.[3]

The State, in order to insure that a properly brought case is not prematurely dismissed as a result of a defendant moving a document containing facts, however slight, in evidence, into a motion to dismiss hearing, may have to try the case at that point, with a full presentation of the facts and the supporting witnesses. Even in that process, the defendant cannot be found guilty because the hearing on the motion to dismiss is not a trial on the merits, but the State can lose the case even though it is not a trial on the merits. The result of the majority's opinion may well be to virtually afford every criminal defendant a full trial before a judge on a motion to dismiss, and then, if not successful at the motion to dismiss stage,

---

1. It is generally understood that it is difficult to get witnesses to come forward and to voluntarily appear as witnesses in criminal proceedings.

2. I understand that with the postponement practices in some jurisdictions, it may well be rare for a witness to only appear once in criminal proceedings. However, the general practice is for one adversarial trial on the merits in which witnesses are required to appear.

3. Md.Code (1957, 1998 Repl.Vol., 2001 Supp.), § 12–302(c)(i) of the Courts and Judicial Proceedings Article.

another full trial before a judge or a jury. What the majority has done is inherently unfair to the prosecution.

The facts of the present case do not create the problem; the problem is that the majority is re-characterizing a long standing procedure. Nor can the problem merely be pushed aside by a thought that the factual circumstances of the parties can be easily proffered by the parties. With the filing of the majority's opinion, any prosecutor, or defense attorney, who stipulates to the other's evidentiary proffer in a motion to dismiss hearing, runs the risk of being considered incompetent.

I have no quarrel with the application of double jeopardy principles when it is appropriate to do so. A motion to dismiss hearing is not a full trial and it has never before been so held in this state or, to the extent of my knowledge, in any state. It is no more appropriate to apply double jeopardy principles to the limited type of hearing engendered when a motion to dismiss is filed, than it would be to apply such principles to hearings resulting from motions to suppress in which extensive factual matters are routinely proffered, and considered, and in which circumstances this Court has long held that such principles do not apply.

In my view, Md. Rule 4–252(d) specifically limits the context of such pre-trial motion to dismiss hearings. As the majority notes, in relevant part the rule provides: "[a] motion [to dismiss] asserting failure of the charging document to show jurisdiction in the court or to charge an offense may be raised at any time." (alterations added).

As can be readily seen, this first part of section (d) relates only to whether the charging document, on its face, indicates that the respective court has no jurisdiction, and whether the charging document on its face fails to charge an offense. The Rule clearly does not contemplate that, as to these two issues, the hearing court shall hold any type of evidentiary hearing. Generally, evidence is simply not relevant to either of those

issues.[4] The Rule, in a subsequent clause, especially relevant here, goes on to state: "Any other defense, objection, or request capable of determination *without* trial of the general issue, shall be raised by motion filed at any time before trial." (emphasis added).

I respectfully submit, that, generally, conflicts in evidence as to guilt or innocence, cannot be resolved without a trial of the general issue. In my view, given the restrictions of the Rule, it is inappropriate for a hearing judge to hear any evidence relating to the general issues that form the basis of the criminal trial. The general issues, in my view, are reserved for the trial on the merits. The majority does not disagree as to this position. A hearing judge is, as I see it, in determining motions such as those in the two cases before us, limited to jurisdictional defects apparent on the face of the charging document, the failure of the charging document to charge an offense or matters that can be determined without reference to evidence and he cannot be permitted to resolve guilt or innocence at this stage.

The majority, citing a series of cases, admits that "where there are factual issues involved, a motion to dismiss on the grounds that the State's proof would fail is improper." The majority goes on to hold that "the trial courts erred in granting the motions to dismiss for the evidentiary insufficiency reasons given by the trial judges." The majority then holds that the indictments, *i.e.*, charging documents, were sufficient and it concludes that both of these cases should have gone to trial. It essentially acknowledges that the hearing courts did not have the power to acquit or convict the defendants at the motion's hearing stage. But the majority does not stop there.

The majority then incongruously states: "Although cloaked in the form of the grant of motions to dismiss, the substance of

---

**4.** It may be necessary in some instances, for a hearing court to consider some facts for a limited purpose, such as in this case, venue issues. Such matters however, do not transform the dismissal hearing to the guilt or innocence stage of a trial.

the trial judges' rulings was to grant judgments of acquittal and so we must treat them [as such]." (alteration added). I cannot recall, and the majority does not present any case in which this Court has ever considered that a motion for judgment of acquittal was granted prior to the opening of a trial on the merits. The rule governing such motions, Maryland Rule 4–324(a) explicitly provides:

"A defendant may move for judgment of acquittal ... at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted...."

Not only have the defendants in the case never moved, appropriately, for judgments of acquittal; because they never appropriately made such a motion they have also never stated with particularity the evidentiary reasons why such a motion should be granted. Additionally, the State has never closed its evidence in a trial on the merits nor has the evidentiary stage of a trial on the merits ever commenced. What the majority ignores in its transmogrification of motions to dismiss into the granting of judgments of acquittal, is that, motions for judgments of acquittal filed prior to a trial on the merits are premature. Non-compliance with the rules requires the dismissal, out of hand, of motions for judgments of acquittal during pre-trial motions to dismiss hearings.

In essence, the majority strains to uphold the granting of something that the trial court had no power to grant and that was never expressly granted, was never appropriately moved for, was premature if moved for, at an inappropriate stage, without there ever being any particularization as required by the rule, and in respect to things that were, by the majority's own admission, only properly resolvable at a trial and thus were inappropriate to even be considered in the motion to dismiss before the majority inappropriately transmogrified most of the motions.

I have no problem with the notion that it is sometimes necessary to look behind form and seek substance. But, I

proffer, it should be done within the boundaries of statutory and rule constraints. The majority, in its struggle to reach substance, grasps for a procedure, a motion for a judgment of acquittal, that was not and could not have been used directly at the relevant point at time. It is not merely exalting substance over form, it is perverting the procedure to reach the substance, and in the process, in my view, the State is being denied a fair trial.

The genesis of the respondents' position appears to be based, at least in substantial part, on the Supreme Court case of *Finch v. United States,* 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977). Although the relative positions of the State and the respondents are not directly adopted in the majority opinion, the differences between *Finch* and *Serfass, infra,* are relevant, in my opinion, to the position the Court should take in the present case. Finch was not a case in which anything that occurred at the pre-trial motion to dismiss was determinative. It has an unusual procedural history that indicates to me that the merits stage of the trial was under way before the trial court dismissed the charges against Finch. The underlying Finch case at the trial level was *U.S. v. Finch,* 395 F.Supp. 205 (D.Mont.1975). In that case the trial court denied the motion to dismiss. After a trial on the merits that concluded seven or eight months later, the trial court said:

"On June 14, 1974, the defendant filed a motion to dismiss said information. The parties submitted extensive and well-considered memoranda of law. On September 4, 1974, an order was filed wherein I denied the motion to dismiss and noted that the information was sufficient on its face. An Agreed Statement of Facts and additional memoranda of law have been filed. Additionally, counsel for the Crow Tribe of Indians and the State of Montana, Department of Fish and Game, have appeared herein as *amici curiae.*

"After a thorough review of the file, I am compelled to reconsider my order ... wherein I denied defendant's motion to dismiss. I conclude that the information is not sufficient on its face for several reasons.

. . .

"In the instant case, plaintiff has failed to show that the Crows were fishermen or that they historically derived their food supply from fishing . . . .

"For the reason that the bed of the Big Horn River is not held by the United States in trust for the Crow Tribe of Indians, and for the reason that even if said river bed were held in trust for the Crow Indians the defendant is not charged with going upon said bed, and for the reason that the Crow Indians lack sufficient sovereignty to prohibit fishing . . . the Court concludes that the information on file herein does not state an offense against the United States." *Finch,* 395 F.Supp. at 207–13.

On appeal to the United States Court of Appeals for the Ninth Circuit, *United States v. Finch,* 548 F.2d 822, 824–25 (9th Cir.1976), that court correctly described the facts leading up to the charges against Finch, and the procedural trial posture of the case:

"This case began when James Junior Finch stood on a bank of the Big Horn River and cast a fishing lure into the waters. He was charged . . . with trespassing on Indian lands . . . . All concede that the State of Montana [and not the Crow Tribe of Indians] owns the bank at that spot, having acquired the property by purchase.

" . . . and he was well aware of an ordinance promulgated by the tribe that forbade all persons who were not tribal members from entering Crow lands for fishing. The district court found that no entry had been made on Indian land and dismissed the information. The Government appeals.

"The court below originally denied a motion by the defendant to dismiss the information. The Government and the defendant stipulated to an 'Agreed Statement of Facts' and submitted the case [for a trial on the merits] for the court's determination. The trial court thereupon reconsidered its earlier ruling and entered an order dismissing the information. Finch asserts that submitting the stipulation of facts

to the court put him once in jeopardy, and that we do not have jurisdiction ... because a reversal would place him in jeopardy a second time.

 ...

"... In this case, we believe that jeopardy attached in the proceedings below.

"Appellee's initial motion to dismiss was denied. The parties then filed an 'Agreed Statement of Facts.' The stipulation was a submission of the case to the district court for plenary determination and decision. This stipulation constituted a waiver of a jury trial; after it was filed, the district court undoubtedly had the power to determine the guilt or innocence of the defendant. The agreed statement of facts, moreover, was relevant to the district court's ultimate decision to dismiss the information....

"In at least two essential respects, this case differs from *Serfass v. United States, supra,* in which the Supreme Court held that jeopardy had not attached. In *Serfass,* the petitioner had not waived his right to trial by jury (in fact he had requested a jury trial), and the district court had no power to determine petitioner's guilt or innocence. By contrast, the defendant here waived his right to a jury trial, and after the initial denial of his motion to dismiss, was subject to the risk of a determination of guilt."[Citations omitted.] [Alterations added.] [Footnotes omitted.]

In the cases *sub judice,* the majority holds that the hearing judges had no power to convict the defendants. It is also obvious that neither of the defendants had finally waived their rights to jury trials. Accordingly, *Serfass,* not *Finch,* as far as the federal constitution issues are concerned, controls. Moreover, it should, in my opinion be controlling in respect to Maryland common law double jeopardy principles.

*Finch* was further discussed in a case where the federal appellate court first found that the Supreme Court had never cited *Finch* in respect to double jeopardy issues, and then considered *Finch* to have been overruled by *U.S. v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). In *U.S. ex rel.*

*Young v. Lane,* 768 F.2d 834, 838–39 (7th Cir.1985), *cert. denied,* 474 U.S. 951, 106 S.Ct. 317, 88 L.Ed.2d 300 (1985), the court stated that:

"One case gives us pause. In *Finch* ... a district court held a trial on stipulated facts. The court found the defendant not guilty, based on a conclusion of law; the court of appeals held the legal conclusion erroneous and ordered the district judge to impose a sentence; the Supreme Court found this barred by the Double Jeopardy Clause because there was no formal finding of guilt to reinstate. Relying on *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), the Court held that whenever a reversal requires further proceedings in the trial court, the Double Jeopardy Clause bars the way.

"The next year the Court overruled *Jenkins,* holding in *Scott* that further proceedings *are* permitted if they do not call into question factual findings favorable to the accused. The majority did not mention *Finch* in *Scott* (although the dissent did), and the Court has not cited *Finch* since. We think that *Scott* overruled *Finch* along with *Jenkins.*

. . .

"If the judge makes a mistake before trial, it can be corrected and the accused tried properly. E.g., *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *United States v. Sanford,* 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976). If the judge makes a mistake after trial, that too can be corrected under *Wilson.* If the prosecution makes a mistake in drafting the indictment, and this causes a mid-trial dismissal, that may be corrected and the trial redone. If the trial judge makes a procedural mistake during trial, and the result is not an 'acquittal,' the mistake may be corrected and the defendant tried again. All these further proceedings can be very costly indeed and lead to expense, anxiety, and a greater risk of conviction, but the [double jeopardy] clause does not prevent all expense and inconvenience. But, if the judge makes a legal error *during trial* that leads to an acquittal—even if error is blatant, and even if the defendant induced the judge to

make the error—the resulting disposition is final." [Some citations omitted.][Some emphasis added.]

The United States Court of Appeals for the Sixth Circuit in *U.S. v. Gamble*, 141 F.3d 621, 625 (6th Cir.1998), more recently clarified the procedural nature of *Finch* when it stated: "He cites *Finch* . . . for the proposition that a pretrial order of dismissal can trigger double jeopardy protection. In *Finch*, however, the entire case had been submitted to the district court on an agreed statement of facts." *See also U.S. v. Wagstaff*, 572 F.2d 270 (10th Cir.1978); *Rivera v. Sheriff of Cook County*, 162 F.3d 486 (7th Cir.1998) (citing *Finch* for the proposition that an acquittal after a bench trial creates jeopardy).

From my reading of *Finch*, it clearly is not similar to the present case. As the Court of Appeals for the Seventh Circuit opined in *Young*, I believe that in *Finch* the trial court first dismissed the motion to dismiss. The case then moved on to the trial on the merits stage by proceeding on an agreed statement of facts. At that point the trial was in a stage where the trial court could have convicted Finch if sufficient evidence existed. After the agreed statement of facts submitted in the merit's stage had been considered, along with the memoranda of law submitted by the parties and *amicus*, the trial judge determined that he had been wrong in denying the motion to dismiss, and changed his ruling. At that point Finch had waived his right to a jury trial and Finch, depending on the evidence could have been found guilty or not guilty. The important issue is that in *Finch* there was a trial on the merits. *Finch*, as I read it, stands for the proposition that if, after a trial on the merits, a trial judge strikes his previous denial of a motion and grants it, then under those circumstances double jeopardy principles preclude a retrial. I do not believe it supports the position proffered by the respondents in respect to the very different situation in the case sub judice. *Finch* simply is not this case.

The correct federal case upon which this Court should rely, and I believe should consider as particularly relative to the

State common law claims, under the circumstances of this case, is a case relied upon by the petitioner, *Serfass v. U.S,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), decided two years earlier than *Finch,* and which was not overruled by *Finch,* but cited as authority for its holding. It is important to note that the issue between the majority and the dissenters in *Finch* was not whether double jeopardy could attach at a motions to dismiss hearing, because in that case there had been a trial on the merits. The issue in the case *sub judice,* whether jeopardy attaches at pre-trial motions hearings if evidence is somehow considered by the hearing judge, was never in the *Finch* case. There, the issue between the Justices was whether double jeopardy could attach in a merit's trial if the evidentiary stage of a trial on the merits proceeded by way of a statement of facts.[5]

The trial court's decision in *Finch* was not rendered in a motion to dismiss hearing, or even after its conclusion, but was only rendered after a trial on the merits whereby the evidentiary stage occurred via an agreed statement of facts. The primary issue that the Court appears to have been addressing in *Finch,* was whether double jeopardy attaches when evidence is presented by an agreed statement of facts. It

---

**5.** The dissenters in *Finch,* when that case was before the Supreme Court, stated:

"My second reason for disagreeing with summary disposition is that this Court has never passed on any claim of double jeopardy where the issues were submitted on an agreed statement of facts, rather than to a jury for its verdict or to the Court for a finding of guilt or innocence after hearing witnesses. . . .

. . .

"If there has been some shift in emphasis in the Court's cases this Term, it seems to me that the submission of guilt or innocence on an agreed statement of facts not only factually distinguishes this case from *Jenkins,* but is a factor to be weighed in any balancing test against a finding of double jeopardy. . . .

"Because we have never decided a case involving double jeopardy claims where the issue of guilt or innocence was submitted to the court on an agreed statement of facts without calling any witnesses, we have never had occasion to pass on when jeopardy attaches in such a situation. . . ." *Finch* 433 U.S. at 678–81, 97 S.Ct. at 2910–12, 53 L.Ed.2d at 1051–53.

appears to me, that the correct holding of *Finch* is that in a trial on the merits jeopardy can attach when the evidence is presented by an agreed statement of facts. When the context of the trial proceedings is fully understood, and the *Finch* decision with its reliance on *Serfass* carefully read, I do not believe that any other interpretation is logically possible.

In *Finch*, 433 U.S. at 677, 97 S.Ct. at 2910, 53 L.Ed.2d at 1050, the majority held:

"We think that the Court of Appeals was without jurisdiction to entertain the appeal. When the District Court dismissed the information, jeopardy had attached, see *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265, (1975), but no formal finding of guilt or innocence had been entered. . . ."

Because the *Finch* Court specifically relied on the authority of *Serfass*, a case where the motion to dismiss was not granted until after a full trial on the merits, it is instructive to examine that case in order to fully understand the holding of *Finch* and the lessons from the federal cases that should be heeded in the present case in respect to the position the majority takes on the State law claims.

Serfass was notified to report for induction pursuant to the draft. At that point he requested an application for a conscientious objector status, but he was not immediately so classified. He was ordered to report for induction, but failed to appear. He was indicted. He prayed a jury trial. Prior to January 9, 1973, the scheduled date of his trial, he filed a motion to dismiss the indictment. Attached to his motion was an affidavit that he had applied for conscientious objector status. A postponement was granted and a date set for a hearing on his motion to dismiss. The parties were directed by the hearing judge to submit certain documentation concerning Serfass' status. At the hearing, the hearing court considered the documentation and considered "the oral stipulation of counsel at the argument 'that the information which Serfass submitted to the Board establishes a *prima facie* claim for conscientious objector status. . . .' " *Serfass*, 420 U.S.

at 380, 95 S.Ct. at 1058, 43 L.Ed.2d at 269. The hearing judge granted the motion to dismiss. The United States appealed to the Court of Appeals for the Third Circuit. Serfass filed a motion to quash with the Court of Appeals, which was denied. The Supreme Court noted that the Third Circuit held that: "[s]ince petitioner had not waived his right to a jury trial, and no jury had been impaneled and sworn at the time the District Court ruled on his motion to dismiss the indictment, jeopardy had not attached and the dismissal was an appealable order.' " *Id.* at 382, 95 S.Ct. at 1059, 43 L.Ed.2d at 270 (footnote omitted). On *certiorari,* the Supreme Court opined:

> "As an aid to the decision of cases in which the prohibition of the Double Jeopardy Clause has been invoked, *the courts have found it useful to define a point in criminal proceedings at which the constitutional purposes and policies are implicated by resort to the concept of 'attachment of jeopardy.'* In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn. In a nonjury trial, jeopardy attaches when the court begins to hear evidence. *The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of the facts, whether the trier be a jury or a judge.'*
>
> "Under our cases jeopardy had not yet attached when the District Court granted petitioner's motion to dismiss the indictment. Petitioner was not then, nor has he ever been, 'put to trial before the trier of facts.' The proceedings were initiated by his motion to dismiss the indictment. Petitioner had not waived his right to a jury trial.... In such circumstances, the District Court was without power to make any determination regarding petitioner's guilt or innocence.... *At no time during or following the hearing on petitioner's motion to dismiss the indictment did the District Court have jurisdiction to do more than grant or deny that motion, and neither before nor after the ruling did jeopardy attach.*
>
> . . .

" . . . [Petitioner] argues that because the ruling was based on 'evidentiary facts outside the indictment, which facts would constitute a defense on the merits at trial,' it was the 'functional equivalent of an acquittal on the merits' and 'constructively jeopardy had attached.'

. . .

" . . . Although an accused may raise defenses or objections before trial which are 'capable of determination without the trial of the general issue,' and although he must raise certain other defenses or objections before trial, in neither case is he 'subjected to the hazards of trial and possible conviction.' . . . Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of guilt or innocence of the accused.' *Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.*" *Serfass*, 420 U.S. at 388–92, 95 S.Ct. at 1062–64, 43 L.Ed.2d at 274–76. [Citations omitted.] [Emphasis added.] [Alterations added.]

It is virtually inconceivable to me that just two years after the *Serfass* case, the Supreme Court, if it had changed its mind about jeopardy attaching at pre-trial motions to dismiss hearings, would not have said so and, in the process, overruled *Serfass*. The only possible explanation as I see it, is that the Supreme Court was fully aware of the fact that in *Finch* it was not dealing with the granting of a pre-trial motion to dismiss, but with a dismissal after a full trial on the merits, albeit on an agreed statement of facts, where the relevant issue was whether trials that proceeded on agreed statements of facts could create double jeopardy prohibitions.

More important, however, is that this Court has already made the same distinction that I now make in respect to *Finch*. *Finch* involved the submission of an agreed statement of facts in a merit's trial, where after considering the agreed statement of facts, the trial judge rescinded his previous

denial of a motion to dismiss. This Court initially stated in respect to the procedural aspects in *State v. Shaw,* 282 Md. 231, 232–36, 383 A.2d 1104, 1105 (1978) that:

".... *The [Shaw] case was submitted to the court on an agreed statement of facts.* ... Shaw moved for a judgment of acquittal following presentation of the agreed statement of facts. The court reserved ruling on the motion. Almost a year later, the court ordered that the charging document be dismissed on the ground that misprision of a felony is not a crime in Maryland." [Emphasis added.] [Alteration added.]

As I have indicated, in *Finch* the trial court initially denied a pretrial motion to dismiss, the trial was actually held, albeit on an agreed statement of facts, and seven or eight months later, after receiving evidence in a merit's trial, the court changed its previous determination as to the motion. We went on to say in *Shaw:*

"[In his favor] [o]n the other hand, Shaw contends that the dismissal amounts to a ruling on the merits and that to remand the case to resolve issues of fact ... would violate the double jeopardy prohibition.

"Both the State and Shaw rely upon several recent Supreme Court cases; they read the cases differently, to say the least....

. . .

"... *The [Finch] case was submitted to the District Court on an agreed statement of facts.* The court, after considering these facts, entered an order dismissing the information for failure to state an offense, and the government appealed.

"The Supreme Court held that the lower appellate court was without jurisdiction to entertain the appeal because at the time the District Court dismissed the information, jeopardy had attached and any further prosecution was barred...." *Id.* at 233–36, 383 A.2d at 1106–07. [Emphasis added.] [Footnote omitted.]

As I read the *Shaw* case, it also involved Maryland common law double jeopardy principles: "It is a well established

common law principle in Maryland that a criminal defendant may not be twice put into jeopardy for the same offense." Nonetheless, this Court relied on the federal cases in applying Maryland double jeopardy principles. In *Shaw*, relying primarily on the federal cases, we opined: "... Since the issues were submitted to the trial court on an agreed statement of facts jeopardy attached." Also in *Shaw*, the trial on the merits was underway, and a motion for acquittal was properly before the court. None of which exists in the cases at bar.

From my reading of *Finch*, it is not similar to the present case. As the Court of Appeals for the Seventh Circuit opined in *Young*, I believe that in *Finch* the trial court first dismissed the motion to dismiss. The case then moved on to the trial on the merits stage by proceeding on an agreed statement of facts. After the agreed statement of facts submitted in the merit's stage had been considered, along with the memoranda of law submitted by the parties and *amicus*, the trial judge determined that he had been wrong in denying the motion to dismiss and changed his ruling. The important issue, however, is that there was a trial on the merits. *Finch*, as I read it, may stand for the proposition that if, after a trial on the merits, a trial judge strikes his previous denial of a motion and grants it, then under those circumstances double jeopardy principles preclude a retrial. I do not believe it supports to any degree the position proffered by the respondents in respect to the very different situation in the case *sub judice*. Moreover *Shaw's* reliance on *Serfass* in applying Maryland common law double jeopardy principles should, in my view, be applied to the circumstances of this case.

Additionally, this Court's cases relied on by the majority, do not, as I view them, support the result the majority reaches.[6] Not a single one of the Maryland cases relied on by the majority involves a motion to dismiss. *Ware v. State*, 360 Md.

---

**6.** *State v. Despertt*, 73 Md.App. 620, 535 A.2d 963 (1988), from the Court of Special Appeals comes perhaps, the closest, in that the trial judge looked at exhibits before improperly basing an acquittal solely on a prosecutor's opening statement. Even then, however, what occurred happened in a trial on the merits not in a motions to dismiss hearing.

650, 759 A.2d 764 (2000), *Thanos v. State,* 330 Md. 576, 625 A.2d 932 (1993), *Booth v. State,* 301 Md. 1, 481 A.2d 505 (1984) *Tichnell v. State,* 297 Md. 432, 468 A.2d 1 (1983) and *Bell v. State,* 286 Md. 193, 406 A.2d 909 (1979), all involved matters relating to motions for mistrials made after the trials on the merits had begun. *Farrell v. State,* 364 Md. 499, 774 A.2d 387 (2001), involved a trial on citations that alleged certain traffic offenses. The case was called for a merit's trial. Farrell pled not guilty and after the State presented no evidence, was found not guilty. The State then attempted to retry him based upon a criminal information. In *Gianiny v. State,* 320 Md. 337, 577 A.2d 795 (1990), Gianiny, as a result of an accident involving a fatality, had been charged with several traffic offenses on citations, including a citation for negligent driving. A trial was scheduled. Before that trial date, upon learning that the State was planning to indict him for automobile manslaughter, Gianiny paid the pre-set fines for the relevant traffic offenses. We first noted:

"[I]n order to prove the greater offense, manslaughter by automobile, the State must necessarily prove the lessor offense, negligent driving.

. . .

"Gianiny paid a fine....[B]y paying the fine he stood convicted of negligent driving....

"The contention that jeopardy never attached because there was no trial and no acceptance of a guilty plea deserves no lengthy discussion. When one has been convicted and punished for a criminal offense, he has been in jeopardy.... If the prosecution terminated before jeopardy attached, the prohibition against double jeopardy simply will not apply.... But once a prosecution has concluded with either a conviction or an acquittal, no further prosecution may be had for the same offense." *Gianiny,* 320 Md. at 343–47, 577 A.2d at 798–99.

In *Daff v. State,* 317 Md. 678, 566 A.2d 120 (1989), the case had been called for trial on the scheduled trial date. When the State discovered that its witnesses were not present, it

requested a postponement of the then proceeding trial on the merits. The trial judge denied the request for a postponement. The defendant then reiterated his plea and his choice to be tried by the court, both elections he had previously made in writing. The State then declined to *"nolle pros"* the charges. When the State declined to *nolle prosequi* the case, the trial judge rendered a verdict of not guilty. That verdict was rendered in the trial, not at a motion to dismiss hearing. This Court made that absolutely clear. We said:

> "The court has the authority to control its docket, and it may force the State to proceed to trial or to enter a nolle prosequi when the case is called for trial on a regularly assigned trial date. Failure of the State to produce any evidence at the trial will necessarily result, as it did here, in an acquittal." *Daff,* 317 Md. at 687, 566 A.2d at 124–25.

During the trial on the merits in *Wright v. State,* 307 Md. 552, 515 A.2d 1157 (1986), a case relied on by respondents here, a trial judge acquitted Wright of the underlying felony but submitted the felony murder count to the jury. It was a classic traditional double jeopardy case. *Brooks v. State,* 299 Md. 146, 472 A.2d 981 (1984), involved the granting of a judgment of acquittal at the close of the State's case and the subsequent attempts by the State to have the judge reconsider, after which the trial judge attempted to alter his ruling by reserving on the motion he had already granted. Subsequently, the judge sent to the jury the same charges in respect to which he had previously granted a motion of acquittal. *Parks v. State,* 287 Md. 11, 410 A.2d 597 (1980), involved a prior correct dismissal specifically based upon un-timeliness where the trial court had not erred. In *Block v. State,* 286 Md. 266, 407 A.2d 320 (1979), a trial judge, after a full trial on the merits first found the defendant guilty; the defendant asked him to reconsider and the trial judge then rendered a verdict of not guilty. Later, the prosecutor asked the judge to set aside the not guilty verdict and reinstate the previous guilty verdict. Instead the trial judge ordered a new trial. In *Blondes v. State,* 273 Md. 435, 330 A.2d 169 (1975), the issue was, in respect to the *nolle prosequi* of charges, when in a trial

on the merits did jeopardy attach. In *Pugh v. State,* 271 Md. 701, 319 A.2d 542 (1974), after a full trial on the merits the trial judge rendered a verdict of "not guilty," and then tried to change his mind in order to render a verdict of guilty. *State v. Barger,* 242 Md. 616, 220 A.2d 304 (1966), involved the circumstance where, in a prior trial by a jury, Barger had been found not guilty of first degree murder, but guilty of second degree murder. The second degree murder conviction was reversed on appeal. At the subsequent trial the State attempted to retry Barger on the first degree murder charge as well as the second degree murder charge. In the older case of *State v. Shields,* 49 Md. 301, 304–05 (1878), Shields had been acquitted of all charges by a jury after a full trial on the merits. The State was seeking to appeal the verdict alleging errors, in order to be able to try Shields again.

As is, in my view, clear, no case in Maryland has yet gone as far as the majority goes in this case. I believe it is necessary to have in advance some discernable line before which, and/or after which, double jeopardy principles attach, whether based on common law, Maryland constitutional law or Federal constitutional law principles. The line established in *Serfass* and like cases should be, in my view, that line: Did the defendant, or was the defendant required to, waive his right to a jury trial and could the defendant be convicted at the proceeding then in progress? If the answer is yes to these questions— jeopardy attaches. If the answer is no-jeopardy does not attach. The procedure adopted by the majority of a case by case analysis that, while it holds a proceeding in error, nonetheless holds that a defendant, who has never waived his right to a jury trial and could not have been convicted, has been placed in jeopardy is, in my view, the wrong procedure to utilize when considering double jeopardy issues. The State can never be sure, in advance, whether the proceeding they are in, is going to become a hearing on a motion for judgment of acquittal because at some point during the proceeding the trial judge considers inappropriate matters and makes a decision that is beyond his or her power to make.

Because neither Taylor, Bledsoe, Kopp or Johnson, waived their rights to a jury trial and neither of them could have been convicted at their respective motions to dismiss hearings, and because I believe the relevant case that we should adopt as controlling this issue is *Serfass, supra,* I would reach the merits of the State's appeal. I would additionally find that it has merit and would reverse the trial courts' granting of the motions to dismiss.

Judges RAKER and WILNER join in this dissent.