The STATE of Ohio, Appellee,

v.

PATTERSON, Appellant.

[Cite as *State v. Patterson* (1989), 63 Ohio App.3d 91.]

Court of Appeals of Ohio,
Montgomery County.

No. CA 11272.

Decided May 23, 1989.

*Lee C. Falke*, Prosecuting Attorney, for appellee.

*Jerry A. Meadows*, for appellant.

FAIN, Judge.

Defendant-appellant, Beverly Patterson, appeals from her conviction and sentence for theft by deception. Although Patterson pled no contest to the charge, she contends that the trial court erred by overruling her motion to dismiss the indictment because, even if she misrepresented her household situation in her application for food stamps, that misrepresentation did not result in her having received food stamps to which she was not entitled.

We conclude that the indictment pleads that Patterson obtained property or services of the state of Ohio as a result of a knowing misrepresentation. Accordingly, we conclude that the trial court properly denied Patterson's motion to dismiss the indictment, regardless of any deficiencies in the evidence that the state might have been able to offer in support of that allegation. The judgment of the trial court will be affirmed.

## I

Patterson submitted an application for food stamps on September 28, 1985. At the beginning of Part 2 of the form, the following sentence is printed:

"Answer the following questions honestly and completely. If you know but refuse on purpose to give any needed information, your household (you and the people who live and eat with you) won't be eligible for food stamps."

In Part 2 of her application for food stamps, Patterson listed herself, her son, Tony Moreland, a daughter and two grandchildren as members of her household. In the part of the application entitled "Resources," Patterson answered the following question negatively:

"Does anyone in your household own (or is anyone buying) any cars, trucks, boats, campers, motorcycles, or other vehicles?"

Also, within this section of the form, she was asked to list amounts for certain items "for each household member, *including children*" (emphasis *sic*). The items included IRA accounts, KEOGH plans, "Credit Union," cash on hand, checking accounts, certificates of deposit, savings accounts, and "Stocks, Bonds, Other." The word "None" is twice written across this part of the form, in handwriting.

Elsewhere, the form calls for a listing of certain sources of income. In this part of the form, Patterson listed her son, Tony Moreland, as a member of the household who was receiving Social Security income, in the amount of $396 per month.

On September 12, 1985, Patterson had received and negotiated a check in the amount of $15,090.15 from the United States Treasury, which was payable to "Beverly F. Patterson for Tony D. Moreland." Patterson received this check as the result of a successful prosecution of a paternity case establishing the late Tommy Sears to have been the father of Tony Moreland, followed by her having made a claim for child survivor Social Security benefits based upon Tommy Sears' earnings.

Patterson received food stamps as a result of her application.

Patterson was indicted for two counts of theft by deception, in violation of R.C. 2913.02(A)(3). The second of these counts related to the application for food stamps. The first count related to an application for Aid for Dependent Children benefits, in which Patterson was alleged to have falsified information.

Patterson moved to dismiss both counts of the indictment, but the trial court overruled her motion.

Thereafter, Patterson entered a plea of no contest to the second count of the indictment, in exchange for a dismissal of the first count of the indictment. The trial court found Patterson guilty of the second count, and sentenced her accordingly. From her conviction and sentence on the second count of the indictment, Patterson appeals.

## II

Patterson's sole assignment of error is as follows:

"The trial court erred in overruling defendant-appellant's motion to dismiss the charges against her of theft by deception."

In her motion, Patterson moved to dismiss the charges against her "for the reasons that the actions with which defendant has been accused are not a violation of any law." Although there does not appear to be any express authority in the Criminal Rules for such a motion, the motion would appear to be analogous to a motion in a civil case to dismiss for failure to state a claim upon which relief can be granted, pursuant to Civ.R. 12(B)(6). As we construe the motion, it tested whether the indictment alleged facts constituting a violation of criminal law.

The second count of the indictment against Patterson, of which she was convicted, reads, in its entirety, as follows:

"AND the grand jurors of this County, in the name and by the authority of the State of Ohio, upon their oaths, do find and present that: BEVERLY PATTERSON, between the dates of September 30, 1985 and February 13, 1986, in the County of Montgomery, aforesaid, and State of Ohio, with purpose to deprive the owner, to-wit: the United States Government of property or services, did knowingly and by deception, obtain said owners' property or services, to wit: Food Stamps, having a value of Three Hundred Dollars ($300.00) or more; contrary to the form of the statute (in violation of Section 2913.02(A)(3) of the Ohio Revised Code) in such case made and provided, and against the peace and dignity of the State of Ohio."

In a civil case, to continue the analogy, the submission of evidentiary material by the parties (such as the evidentiary material submitted by both parties in connection with Patterson's motion to dismiss) would permit the trial court, in its discretion, to treat a motion to dismiss as if it were a motion for summary judgment. There does not appear to be any criminal law analogy to a civil motion for summary judgment.

Summary judgments are a way of disposing of cases in which, notwithstanding averments in the pleadings, there is no genuine issue of

material fact. In awarding summary judgment in a civil case, a trial court is not required to credit the allegations of the pleadings.

Since summary judgments (in civil cases) permit trial courts to enter judgments without trial of factual issues disputed in the pleadings, they are in derogation of the common law preexisting the Ohio Civil Rules. We are not aware of any analogous provision in criminal cases.

Consequently, we conclude that a motion to dismiss charges in an indictment tests the sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced by either the state or the defendant. Although both parties argued Patterson's motion to dismiss the charges against her from the standpoint of the evidentiary material submitted by her in support of her motion, and although the trial court considered that evidentiary material in overruling her motion, we conclude that it was not proper for the trial court to do so. The proper determination was whether the allegations contained in the indictment made out offenses under Ohio criminal law. If they did, it was premature to determine, in advance of trial, whether the state could satisfy its burden of proof with respect to those charges.

Although the parties have argued whether it was necessary for the state of Ohio to prove that Patterson obtained food stamps as a result of her alleged deception (by means of misrepresentations contained in her application for food stamps), the second count of the indictment clearly alleges that she obtained food stamps as a result of her deception. Therefore, we conclude that the second count of the indictment properly charges an offense, pursuant to R.C. 2913.02(A)(3). Accordingly, it was not error for the trial court to overrule Patterson's motion to dismiss the indictment.

Patterson's sole assignment of error is overruled.

### III

Patterson's sole assignment of error having been overruled, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., and WILSON, J., concur.