**The STATE of Ohio**

v.

**LIVESAY.** ▮

Court of Common Pleas of Ohio,
Jackson County.

No. 97 CR 077.

Decided Feb. 19, 1998.

*Mark Ochsenbein,* Jackson County Prosecuting Attorney, for the state.

*Oths, Heiser, Regan & Miller* and *Joseph A. Oths,* for the defendant.

---

LAWRENCE GREY, Judge.

Defendant, Hugh S. Livesay, was employed by the Ohio State Highway Patrol to inspect vehicles. The Highway Patrol used a hidden video camera to tape his activities and Livesay was fired for failing to perform the inspections. The matter was presented to a grand jury which indicted Livesay on sixty-eight counts of dereliction of duty. There were also five other counts charging receiving improper compensation, which will be discussed later.

Livesay filed a motion to dismiss on several grounds. The first is that the indictment is insufficient to charge criminal acts. The second is that the indictment does not charge that Livesay has violated any express statutory duty. The third is that the claimed violation of an Administrative Code provision (Ohio Adm.Code 4501–33–06) as recited in the bill of particulars as a basis for criminal liability, is insufficient to support a criminal indictment.

## FACTS

The facts in this case are fairly simple and essentially not disputed. Livesay was employed to inspect vehicles with salvaged titles which must be inspected and recertified before a new title can be issued. Various people, including car dealers, would regularly bring cars in for inspection. Occasionally, these people would bring in donuts or pizza for the people in the inspection office. One time one of them did not bring pizza but gave $20 to buy the pizza. The Highway Patrol charges that Livesay did not properly inspect the vehicles and gave preferential treatment to the people who brought food.

## STANDARD OF REVIEW

A motion to dismiss tests the sufficiency of the indictment without regard to the quantity or quality of the evidence that may be produced either by the state or the defendant. The question is: Do the allegations set forth in the indictment make out a criminal offense? *State v. Patterson* (1989), 63 Ohio App.3d 91, 577 N.E.2d 1165. For purposes of this motion the court will assume that Livesay failed to make proper inspections as described in his job duties and did accept the donuts and pizza as alleged.

*ANALYSIS: Counts 1 through 68*

This court is fortunate in that the brief of the prosecuting attorney focuses the court's attention on the precise issues in this case, as the following excerpts from his brief demonstrate:

"Does H.S. Livesay, a public servant, who is hired to perform vehicle inspections by the Ohio State Highway Patrol commit criminal activity if he fails to perform those vehicle inspections?

"There is no criminal liability imposed upon the defendant for his failure to perform his job duty. This is acknowledged by the State.

"However, if the court makes a finding that the code sections as set out in the Administrative Code have the effect of law and specifically require the defendant to perform his vehicle inspections, then the defendant's motion should not be well taken.

"The Code, as set forth in a bill of particulars does place a requirement on the Ohio State Highway Patrol in general to inspect vehicles. While the Ohio Revised Code does not set forth any specific duty, the rule making powers of the State as set forth in the Ohio Administrative Code do set forth a specific duty of H.S. Livesay. Thus, it becomes a decision of the court to determine when viewing this case whether or not the Ohio Administrative Code can be a basis for criminal liability under Section 2921.45(E) of the Ohio Revised Code."

Defendant in his motion to dismiss argues that allowing administrative rule-making powers decisions to be the basis for criminal prosecution is unconstitutional. This court notes that there are areas where an administrative decision may give rise to subsequent prosecution. Items are added to, and removed from, the list of export controls almost weekly. This is done entirely administratively and, some contend, done almost solely on political considerations; nonetheless, criminal liability under federal law may arise out of selling such banned items. Drugs are scheduled and rescheduled, and the possession of controlled substances can lead to criminal prosecution. In *State v. Klinck* (1989), 44 Ohio St.3d 108, 541 N.E.2d 590, the automatic revision of the schedules in R.C. Chapter 3719 to reflect changes in federal schedules was held not to be an unconstitutional delegation of legislative authority. See, also, *Touby v. United States* (1991), 500 U.S. 160, 111 S.Ct. 1752, 114 L.Ed.2d 219, for a similar holding as to federal constitution.

While reference to an administrative decision to establish a fact of criminal activity may not be unconstitutional *per se,* the reference must be precise and specific. Scheduled drugs are very specific chemical compounds whose identity can be precisely determined. A person need not guess at what he must do to avoid violating the drugs laws or to avoid exporting what is on the proscribed list.

As noted in *Grayned v. Rockford* (1972), 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222, 227–228, vague laws have been deemed to be constitutionally offensive for several reasons:

"First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." See, also, *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 618 N.E.2d 138, where the crime of loitering for the purpose of engaging in drug-related activity was held to be unconstitutionally vague. Relying on *Grayned v. Rockford* (1972), 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222, the court held that R.C. 2901.03 prohibited a citizen from being convicted of a crime not defined by a legislative enactment.

A leading case on the degree of specificity required under R.C. 2921.44(E) is *State v. Gaul* (1997), 117 Ohio App.3d 839, 691 N.E.2d 760. In that case the Cuyahoga County Treasurer was tried for dereliction of duty for speculation with public funds, *i.e.*, at one point the funds were leveraged at over three to one. In that case the court discussed a motion for acquittal (the standard for which is quite similar to motion to dismiss so we have included it here), and the requirement that dereliction of duty be based on some expressly stated duty in the statute. The court in *Gaul* said at 849, 691 N.E.2d at 766–767:

"A motion for acquittal should not be granted where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. 'The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence, and, where the evidence is insufficient, to take the case from the jury.' *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 163, 14 O.O.3d 403, 404, 398 N.E.2d 781, 782. It should be granted where the evidence is so slight or of so little probative value that reasonable minds must have reasonable doubts as to the defendant's guilt. See *Bridgeman*, 55 Ohio St.2d at 264, 9 O.O.3d at 402–403, 381 N.E.2d at 185–186. The grounds for acquittal are strongest where the state entirely fails to produce any evidence to support an essential element of the charge. *State v. Kline* (1983), 11 Ohio App.3d 208, 213, 11 OBR 330, 336–337, 464 N.E.2d 159, 164–165. See *State v. Manago* (1974), 38 Ohio St.2d 223, 67 O.O.2d 291, 313 N.E.2d 10."

"R.C. 2921.44(E) provides:

" 'No public servant shall recklessly fail to perform a duty expressly imposed by law with respect to his office, or recklessly do any act expressly forbidden by law with respect to his office.'

"One of the essential elements of the charge is that the accused was under a duty expressly imposed by law. If such a duty can be identified, there must have been evidence showing that Gaul actually violated it for his motion for judgment of acquittal to have been properly denied.

"The grand jury issued what can only be described as a vague allegation charging Gaul with violating an undefined duty imposed by an unspecified law. The state filed two bills of particulars setting forth three distinct theories that Gaul violated duties imposed by R.C. 135.35(A) and (D), as well as R.C. 321.04. We discuss them in turn.

"* * *

"These fiduciary duties to preserve public moneys cannot serve as the basis of a criminal charge for dereliction of duty under R.C. 2921.44(E) because they are merely implied in the general grant of authority to make the investments in R.C. 135.35(A). R.C. 2921.44(E) requires the underlying statute to expressly impose a duty upon the accused; an implied duty is therefore insufficient to support a charge of dereliction of duty."

The duties imposed on Livesay as an inspector for the Highway Patrol are set out in the Administrative Code, but they are not so specific as to create criminal liability for failure to perform in accord with those regulations. The procedure to be followed for misfeasance or malfeasance is to fire the employee.

Based on the foregoing, the court finds that as to counts 1 through 68 relating to the violation of R.C. 2921.44(E), the indictment is insufficient. The motion to dismiss as to Counts 1 through 68 is well taken.

*ANALYSIS: Counts 69 through 72*

The court now turns to Counts 69 through 72, those charging receipt of improper compensation.

The construction of any legislative enactment is done for the purpose of ascertaining legislative intent by looking at the words used in the statute, so we will repeat the language of the statute here.

R.C. 2921.43, soliciting or receiving improper compensation, provides:

"(A) No public servant shall knowingly solicit or accept and no person shall knowingly promise or give to a public servant either of the following:

"(1) Any compensation, other than as allowed by divisions (G), (H), and (I) of section 102.03 of the Revised Code or other provisions of law, to perform his

official duties, to perform any other act or service in the public servant's public capacity, for the general performance of the duties of the public servant's public office or public employment, or as a supplement to the public servant's public compensation."

Looking at R.C. 102.03 one sees references to political contributions, honorariums, travel expenses including lodging and food. It seems clear from the reading of these statutes that the legislature intended to get at such things as kickbacks, free trips to the Rose Bowl, flower funds, and bribes disguised as honorariums, but the question is, to what extent did the legislature intend the statute to apply?

Again, this court is indebted to the prosecuting attorney's brief for putting the question in this case precisely:

"In fact, evidence would indicate that the defendant never received any cash payments whatsoever, but was the beneficiary of food items brought to the State Highway Patrol Post where other individuals participated in accepting food from customers of the Highway Patrol Post. The issue * * * which should be viewed by the court is: *Does* this act, the receipt of food items for personal consumption, constitute improper compensation as defined by the statute." (Emphasis added.)

If words are to be given their ordinary meaning, as is required in R.C. 1.03, then it may be best to begin with the definition of "compensation," since the legislature chose that word. "Compensation" generally means an exchange in return for or to requite some obligation, tit for tat, so to speak. The legislature could have used the phrase "anything of value" or "payment," but chose the word "compensation" to require as an element of the crime that there be an exchange, *i.e.*, one person gets something from another.

The legislature was no doubt aware that among ordinary people there is often an exchange of things of value: a ride, a shared umbrella, a cup of coffee, a cigarette, a stick of gum. It is not uncommon for law firms to send a box of candy or cookies to county offices around Christmas time. Indeed, the undersigned has enjoyed a piece of birthday cake (food) prepared by an employee on several occasions. The court finds that it was not the intent of the legislature to outlaw the common habits of human sociability. The state of Ohio concedes as much.

The state of Ohio, however, asserts that it was not the donuts or the pizza *per se*. Rather, the state contends that favoritism was shown to those who brought them to the office, and this is the basis of the improper compensation charges.

Favoritism, however, is quite subjective. Some persons, such as title searchers or car dealers, have regular or even daily contacts with government offices. Accommodating big volume customers is a common management practice both in and out of government. It is common for these government offices to accommo-

date the heavy users of their services by providing special work areas, hours, etc. If a person gets friendly service from the personnel of a public office with whom he works regularly and brings in a box of donuts one day, and the staff eats the donuts, has a crime been committed? Is this what the legislature intended when it prohibited illegal compensation? We think not.

As noted in *Akron v. Rowland, supra,* one ought not to have to guess at what is criminal conduct. *Rowland* states at 67 Ohio St.3d at 381–382, 618 N.E.2d at 145:

"Due process requires that the terms of a criminal statute be reasonably clear and definite and that there be ascertainable standards of guilt on which citizens, courts, and the police may rely. A person cannot be punished simply because the state believes he or she is probably a criminal. * * * It is a constitutional imperative that the dividing line between the lawful and the criminal be clear to all and not subject to conjecture."

What is favoritism? Did they get good service because they brought in the donuts, or did they bring in the donuts because they got good service? One must guess, like the chicken and the egg, which comes first and which caused which. Favoritism is far too vague to be the basis for a criminal charge. The state's position here is quite anomalous. If a clerk is rude and unhelpful to everybody, he will never be charged with a crime. However, if a clerk is polite, helpful and friendly, he might be indicted for being too helpful. A government clerk ought not to fear that if the service he gives to one customer is too good, he may run afoul of the law on a charge of favoritism.

To be sure, an appearance of favoritism may arise in a situation where a regular customer provides some amenity such as buying donuts for the staff. Nothing would prevent the office supervisor from prohibiting it or punishing any member of the staff who violated the policy. Violation of the policy, however, would only give rise to grounds for some job action such as suspension or firing. It would never rise to a criminal offense.

Based on the foregoing, the court finds that Counts 69 through 72 are insufficient. The motion to dismiss as to these counts is well taken.

### *JUDGMENT*

Based on the courts's findings as set out above that the indictment in this case is insufficient, the court grants defendant's motion to dismiss. This case is dismissed. Defendant is ordered discharged. Costs to the state.

*Judgment accordingly.*

LAWRENCE GREY, J., retired, of the Fourth Appellate District, sitting by assignment.