{¶ 43} A Crim.R. 12 pre-trial motion to dismiss cannot reach the merits or substance of the allegations as there is no equivalent of the civil rules' summary judgment procedure in the criminal arena. State v.Riley, 12th Dist. No. CA2001-04-095, 2001-Ohio-8618, *4-*5. Therefore, pre-trial motions to dismiss "can only raise matters that are capable of determination without a trial on the general issue." Id. at *4; see, also, State v. Patterson (1989), 63 Ohio App.3d 91, 95. It is the sufficiency of the indictment which is judged at this pre-trial stage.Akron v. Buzek, 9th Dist. No. 20728, 2002-Ohio-1960, *4.
 {¶ 44} Brady claimed that his motion to dismiss "was not based upon any facts in his case," and maintains the trial court was correct in dismissing the matter on his pre-trial motion. I disagree. The trial court's ruling was premature and inappropriate at the pre-trial juncture and I must respectfully dissent.
 {¶ 45} If a claim goes beyond the face of the indictment, then it is improperly presented under Crim.R. 12, and should be presented at the close of the state's case as *Page 12 
a motion for acquittal pursuant to Crim.R. 29. State v. Varner (1991),81 Ohio App.3d 85, 86. Under this guideline, it was premature for the trial court to grant Brady's motion to dismiss based on alleged facts that had not yet occurred. Brady's motion went beyond the face of the indictment. At no point in time did Brady challenge the sufficiency of the indictment as far as charging the proper offenses or the constitutionality of the offenses thus charged. Rather, Brady only asserted that his expert witness and all similarly-situated experts would be precluded from effective performance.
 {¶ 46} The majority upholds the pre-trial dismissal on the basis that Brady could not receive a fair trial. In order to reach this conclusion, the majority must speculate first that Brady's expert could not perform his duties without violating federal law (a false assumption in any event because Brady's expert and appellate counsel conceded at the oral arguments that the expert could have viewed the material at the sheriff's or prosecutor's office and performed his tasks there). Second, the majority must accept the assumption that Brady would not be able to find an expert to accomplish the expert tasks required. The final assumption required by the majority's analysis is that the expert would have been able to show that the images in Brady's possession were indistinguishable from virtual pornography images. This amounts to assumptions based on assumptions based on assumptions. It is incredible to me that the majority would allow Brady to escape prosecution under these circumstances. As much as I believe Brady is entitled to a fair trial, I also believe the victims of child pornography deserve to have their alleged perpetrator stand trial. *Page 13 
 {¶ 47} Each aspect of Brady's motion to dismiss speculated that Brady would be precluded from presenting an adequate defense as a result of the chilling effect of the FBI's actions against Boland. Brady assumed that the State would present the expert testimony of Dr. Farid to support its theory that the materials were photos and depictions of actual children. Brady assumed that no other expert witness would be willing to testify on his behalf for fear of federal prosecution. Brady assumed that Boland could not present a convincing case by merely viewing the materials at a law enforcement office as opposed to transporting the materials for his own convenience. The trial court, and the majority, have accepted each and every assumption as fact.
 {¶ 48} The cornerstone of Brady's argument lies in Ashcroft v. TheFree Speech Coalition (2002), 535 U.S. 234. In Ashcroft, the Supreme Court held that a prohibition on virtual child pornography is overbroad. Virtual child pornography does not involve real children but digitally altered or created "children." In doing so, the Supreme Court determined that the government cannot prohibit speech that may, in some tenuous manner, induce a person to illegal behavior. Id at 253.Ashcroft did not address the issue as to whether morphed images of children, that is, the alteration of innocent pictures of actual children using digital technological means, is an appropriate ban. It appears from the record that Boland's activities in creating previous trial exhibits actually involves morphed images of children, activity still illegal under federal law with no exceptions.
 {¶ 49} Boland testified that one of his tasks as Brady's expert would have been the creation of certain trial exhibits. Boland stated his "expertise is in the creation and manipulation alteration of digital images." Boland outlined his work product which would *Page 14 
include an analysis as to whether the materials contained images of actual children. Next, Boland would "prepare digital image exhibits that [would] address the technological issues * * *." According to Boland, he would violate federal law by both the possession and analysis of the images as well as the preparation of trial exhibits.
 {¶ 50} Presumably, the State's expert would testify that the images depicted actual children and Boland would testify that the images portrayed either virtual children or adults technologically morphed to look like children. Under this theory, Boland's analysis and work product would not violate Ohio or Federal law pursuant toAshcroft.
 {¶ 51} The problem lies in the speculation. Without actually going forward with the trial, it is conjecture to pre-determine Boland's testimony and the impact of the federal law on the effectiveness of that testimony. To that end, the trial court exceeded the scope of a pre-trial motion to dismiss. State v. McNamee (1984),17 Ohio App.3d 175, 176-177. Boland attempts to cure this defect by asserting that all defense experts would be prohibited from adequate function under the federal application of the law. However, the only testimony elicited at the hearing was that of Boland himself. Boland opined that other experts may not want to work under these threatening conditions, thereby violating Brady's Sixth and Fourteenth Amendment rights. Although constitutional issues may be determined prior to trial in some circumstances, where that determination turns on an evidentiary issue and goes beyond the face of the indictment, it is inappropriate for a pre-trial adjudication pursuant to Crim.R. 12. Lorain v. Slattery (Sept. 22, 1999), 9th Dist. No. 98CA007140, 1999 Ohio App. LEXIS 4357, *4.
 {¶ 52} The court accepted Boland's presumption that other experts may refuse employment on this basis. However, even Boland himself admitted that he would not *Page 15 
be precluded from reviewing and analyzing the evidentiary material; he is only prohibited from possessing that material. Boland acknowledged that he could perform the analysis portion of his expert witness activities at the prosecution's office or in the court. Certainly in either of these locales, Brady does not violate any law because he is merely reviewing the material — not possessing the contraband.
 {¶ 53} Therefore, the possession aspect of Boland's expert activities can be cured by allowing Boland to work out of the sheriffs or prosecutor's office. The remaining activities of Boland, the creation of the digital images, would only be illegal under federal law if Boland morphed images of actual children. The problem is that morphed images are still illegal and properly banned under Ashcroft. Therefore, Boland is actively violating the law through the creation of these exhibits. However, the law does not preclude Boland from creating virtual pornography to support his expert testimony.
 {¶ 54} Clearly, Brady's motion to dismiss went beyond the face of the indictment. It required the trial court to conduct an analysis into a hypothetical. Hypothetical questions are not appropriate questions of law. The circumstances could change. Boland may have completed his analysis and actually agreed with the State. Brady may have been able to find another expert willing to work under threat of federal prosecution. Boland could physically go to the prosecutor's office and review and analyze the materials. Brady's expert may be able to competently review and advise after viewing the images while they remained in the possession of the State. The same interests which prompted the legislation prohibiting the dissemination of this material, *Page 16 
are the same interests that weigh in favor of maintaining a stationary location for the images to be retained during the analysis.
 {¶ 55} This dismissal has essentially provided Brady and any other like-minded individual with a free pass to possess, observe, disseminate, distribute and manufacture any type of pornography without fear of prosecution. The ramifications of plunging down the slippery slope of the majority's analysis are many. Following the reasoning of the majority, any expert can now assert that in order to properly offer an opinion, the expert must essentially recreate the crime. Certainly the majority would be unwilling to allow this diversion in the arena of a murder trial. Yet they see fit to do so here. A murder suspect would not evade prosecution merely because his expert would not be permitted to strike another human being over the head with the murder weapon, yet Brady receives a pass from this court because his expert could not recreate unlawful pornography. The public interest is certainly better served in protecting the victims of child pornography than in allowing such divertive tactics to succeed at evading prosecution.
 {¶ 56} For the foregoing reasons, I would therefore reverse and remand this matter. *Page 1