[Cite as *State v. Gaines*, 2017-Ohio-8906.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2017-CA-67 |
| | : | |
| v. | : | Trial Court Case No. 17-CR-260 |
| | : | |
| JERROD GAINES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of December, 2017.

. . . . . . . . . . .

D. ANDREW WILSON by ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, 4th Floor, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellant

KAREN S. MILLER, Atty. Reg. No. 0071853, P.O. Box 341274, Dayton, Ohio 45434
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Pursuant to R.C. 2945.67(A) and Crim.R. 12(K), the State of Ohio appeals the decision of the Clark County Court of Common Pleas granting Jerrod Gaines's motion to dismiss. For the following reasons, the trial court's judgment will be reversed and the case remanded for further proceedings.

## I. Facts and Procedural History

{¶ 2} Officers Collin Peterson and Trenton Holbrook of the Springfield Police Department were the sole witnesses at the hearing on Gaines's motion to dismiss. The evidence at the hearing established the following facts.

{¶ 3} At approximately 5:10 a.m. on April 30, 2017, Officers Peterson and Holbrook were dispatched to an alley to the rear of a residence on East Cecil Street on a report of a disturbance in the area. The caller, who provided his name and address, had reported that "two guys" were having "some argument" in the alley behind his house. When questioned by the dispatcher if the argument was between two males, the caller responded, "I can't tell." The caller indicated that he could hear arguing, but could not see anyone. Officer Peterson testified that the dispatcher relayed that "[w]e had a call of two people fighting in the rear alley behind [house number] East Cecil." Officer Holbrook testified that the "call was there was two people arguing, possibly fighting in the rear of the alley."

{¶ 4} When the officers arrived, there was an unoccupied vehicle blocking the alley and a second vehicle parked in a parking spot to the rear of a home. The officers saw a man, later identified as Gaines, standing by the parked vehicle and a woman, later identified as Gaines's wife, seated in the driver's seat of that car. The officers never

observed Gaines fighting with the woman and never heard him threaten to harm her. Gaines's wife never complained to the officers that Gaines had assaulted or threatened her. In fact, the officers never talked to, or attempted to talk to, Gaines's wife about the reported incident.

{¶ 5} Officers Peterson and Holbrook got out of their police van and began to walk toward the Gaineses. Peterson approached Gaines, while Holbrook focused on Gaines's wife. As the officers were exiting their vehicle, Peterson called to Gaines to "come here." Gaines walked away toward the fenced backyard of his residence and tossed something (which the officers later learned were his keys) into the bushes. Officer Peterson testified that he wanted to talk to Gaines because he (the officer) believed there may have been a "possible domestic" and he wanted to investigate the item that was discarded into the bushes. Peterson repeatedly told Gaines to stop; Gaines eventually stopped at the gate to his yard (about 15 to 20 feet from his car), became "irate" and began yelling, "What did I do? Why are you stopping me? I didn't do anything." Gaines put his hands in his pockets, which prompted Peterson to order Gaines to remove his hands from the pockets. Gaines complied.

{¶ 6} According to Officer Peterson, Gaines was "bucking up at us" and "puffing out his chest." Gaines continued to question why he was stopped and to say that he had done nothing wrong. Gaines also yelled that he had tossed his keys. Peterson decided to handcuff Gaines for his safety; there is no indication that he told Gaines the reason why he (Gaines) was being handcuffed. Peterson told Gaines, "You know, okay. That's fine. But we'll figure it out here in a second, but I'm going to need you to turn around and put your hands behind your back." The trial court took judicial notice that Gaines was

"big and extremely muscular (6'0/ 230 lbs according to the police report)."[1] Officers Peterson and Holbrook then approached Gaines.

{¶ 7} When the officers tried to handcuff Gaines, Gaines pulled away and yelled, "You ain't cuffin' me, you ain't cuffing me." Gaines struggled with the officers, and Officer Peterson called for back-up. Peterson and Holbrook were able to place Gaines in handcuffs before back-up came. As back-up officers arrived, another scuffle ensued when the officers tried to place Gaines in the van. Officers used a Tazer on Gaines, and they were ultimately able to place him in the police van. Gaines was arrested for obstructing official business and resisting arrest, and was transported to the Clark County Jail.

{¶ 8} On May 8, 2017, Gaines was indicted for obstructing official business, in violation of R.C. 2921.31(A).

{¶ 9} On June 19, 2017, Gaines filed a motion to dismiss the case on the grounds that the officers lacked a reasonable articulable suspicion to believe the Gaines was involved in criminal activity and that they had no probable cause to arrest him. Gaines wrote:

> Obstructing official business requires that defendant hamper or impede a public official in the performance of the public official's lawful duties. The officers had no lawful authority or duty to detain and/or arrest defendant. Being detained and subsequently being arrested violated defendant's rights under both the Ohio Constitution and the Federal Constitution.

---

[1] The arrest report indicates that Gaines is 5' 10" and 265 pounds.

The State opposed the motion, asserting that the officers had a reasonable articulable suspicion to stop Gaines and that his subsequent conduct constituted obstructing official business.

{¶ 10} On July 7, 2017, the trial court held a hearing on the motion, during which Officers Peterson and Holbrook testified. The hearing was reconvened on July 20, 2017 for closing arguments on the motion.

{¶ 11} The same day (July 20, 2017), the trial court filed a written decision granting the motion "to suppress and/or dismiss." The trial court found that the officers "had a reasonable and articulable suspicion, albeit somewhat slight, that a domestic dispute had just occurred and were therefore legally authorized under the Fourth Amendment to stop the defendant for further investigation." The court further found, however, that the "facts and circumstances in this case did not warrant the use of handcuffs" and that "placing the defendant in handcuffs in this situation appears to the Court to be overly intrusive and a violation of his rights under the Fourth Amendment."

{¶ 12} The State appeals from the trial court's decision.

{¶ 13} At the outset, the trial court referred to Gaines's motion as a "motion to suppress and/or dismiss," and the State's appellate brief addresses the trial court's decision both as a suppression decision and a dismissal decision. Gaines's motion was captioned as a motion to dismiss, and it sought dismissal of the case against him. He did not ask to suppress any evidence, as there apparently was no evidence to suppress. Accordingly, we will address Gaines's motion as he filed and argued it in the trial court, i.e., as a motion to dismiss.

{¶ 14} We review de novo a trial court's decision on a motion to dismiss. *State v.*

*Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 19 (2d Dist.). "De novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Clay*, 2d Dist. Miami No. 2015-CA-17, 2016-Ohio-424, ¶ 5.

{¶ 15} Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. Crim.R. 12(C); *State v. Palmer*, 131 Ohio St.3d 278, 2012-Ohio-580, 964 N.E.2d 406, ¶ 22. In other words, a motion to dismiss "tests the sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced by either the state or the defendant." *State v. Patterson*, 63 Ohio App.3d 91, 95, 577 N.E.2d 1165 (2d Dist.1989); *Fields* at ¶ 18. If the allegations contained in the indictment constitute offenses under Ohio criminal law, it is premature to determine, in advance of trial, whether the State could satisfy its burden of proof with respect to those charges. *Id.*

{¶ 16} R.C. 2921.31(A), the obstructing official business statute, provides:

No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶ 17} As stated above, Gaines sought to dismiss the obstructing official business charge, arguing that the officers did not have a reasonable articulable suspicion to believe that he was involved in criminal activity and lacked probable cause to arrest him. Stated differently, Gaines asserted that he had a privilege to disobey the officers' orders to stop and that his actions did not hamper or impede the officers' performance of their *lawful*

duties. Gaines's arguments about whether Officers Peterson and Holbrook lawfully stopped and detained him are directly related to the general issue at trial, i.e., whether Gaines committed the offense of obstructing official business. *Accord State v. Casey*, 2017-Ohio-848, __ N.E.3d __ (2d Dist.). The issues raised in Gaines's motion were matters for trial and not appropriately raised in a motion to dismiss. Accordingly, the trial court erred in granting Gaines's motion to dismiss.

**{¶ 18}** In concluding that the matters raised were inappropriate for a motion to dismiss, we state no opinion on the merits of the substantive issues raised in Gaines's motion. The State's assignment of error is sustained.

### III. Conclusion

**{¶ 19}** The trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

HALL, P.J. and DONOVAN, J., concur.

Copies mailed to:

D. Andrew Wilson
Andrew P. Pickering
Karen S. Miller
Hon. Douglas M. Rastatter