**[Cite as *State v. Letts*, 2025-Ohio-1085.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. Nos. 30143; 30147 |
| | : | |
| v. | : | Trial Court Case Nos. 23-TRD-5503; |
| | : | 23-CRB-4141 |
| WILLIAM LETTS | : | |
| | : | (Criminal Appeal from Municipal Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 28, 2025

. . . . . . . . . . .

ROBERT L. SCOTT, Attorney for Appellant

EMILIE N. HOLLAND, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} In two consolidated appeals, William Letts challenges his conviction on one count of failure to comply with an order or signal of a police officer, one count of failure to reinstate his driver's license, and one count of failure to obey a traffic-control device.

{¶ 2} Letts contends the trial court erred in failing to dismiss the charges because

a park ranger lacked authority to initiate a traffic stop after seeing him driving the wrong way on a one-way street outside of the ranger's territorial jurisdiction.

{¶ 3} We conclude that the park ranger acted within his territorial jurisdiction when he attempted to stop Letts' vehicle. Accordingly, the trial court's judgments in the two cases will be affirmed.

## I. Background

{¶ 4} In Case No. 23-CRB-4141, Letts was charged with two counts of failure to comply with an order or signal of a police officer. In Case No. 23-TRD-5503, he was charged with failing to reinstate his driver's license and failing to obey a traffic-control device.

{¶ 5} The foregoing charges stemmed from a Five Rivers Metroparks ranger's observation of Letts travelling the wrong way on a one-way street in the early-morning hours of November 19, 2023. Ranger David Adkins was traveling east on Negley Place, a one-way street for eastbound traffic, in the city of Dayton. He was driving a marked Metroparks Ford Explorer with a red and blue light bar on top. Adkins saw Letts driving the wrong direction toward him. Letts was traveling west on Negley Place between Ferguson Avenue and North Paul Lawrence Dunbar Street.

{¶ 6} Upon observing the traffic violation, Adkins moved to the middle of the narrow street and activated his vehicle's overhead lights. Letts responded by driving over the sidewalk and going around Adkins' vehicle. Adkins turned around, activated his siren, and pursued Letts. During the pursuit, Adkins obtained Letts' license plate number. Adkins discontinued the pursuit when Letts ran a red light at a high speed. After losing sight of

Letts' vehicle, Adkins checked the license plate number and obtained Letts' address. Within 30 minutes of the incident, he proceeded to Letts' residence in Dayton. Adkins encountered Letts outside and arrested him.

{¶ 7} After being charged in the above-captioned two cases, Letts moved to dismiss all charges. He argued that Adkins' initial attempt to stop him on Negley Place occurred outside the ranger's territorial jurisdiction. As a result, Letts asserted that continued prosecution would violate his right to due process under the U.S. Constitution and the Ohio Constitution.

{¶ 8} Letts' motion to dismiss proceeded to a February 7, 2024 hearing in Dayton Municipal Court. The sole witness was Five Rivers Metroparks detective Jeremy Fritz, who testified about the nature and extent of the agency's jurisdiction to make traffic stops and enforce the law. Based on Fritz's testimony, the trial court held that ranger Adkins had possessed authority to initiate a traffic stop on Negley Place.

{¶ 9} The two counts of failure to comply with an order or signal of a police officer were tried to a jury, which found Letts guilty on one count and not guilty on the other. The trial court separately found Letts guilty of the driver's-license violation and failure to obey a traffic-control device. For the failure-to-comply conviction, the trial court imposed a 180-day jail sentence with 179 days suspended and credit for one day served. The trial court placed Letts on one year of supervised probation and suspended his driver's license for six months. The trial court suspended all fines and costs and ordered 30 hours of community service. For the two traffic violations, the trial court imposed and suspended a $50 fine and an order to pay court costs. Letts timely appealed, advancing one

assignment of error.

## II. Analysis

{¶ 10} The sole assignment of error states:

THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO DISMISS, BECAUSE THE FIVE RIVERS METROPARKS RANGER VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS.

{¶ 11} Letts contends the charges against him should have been dismissed because ranger Adkins initiated a traffic stop on Negley Place, which is outside the jurisdiction of Five Rivers Metroparks.

{¶ 12} Letts acknowledges that Metroparks rangers possess law-enforcement authority on Metroparks property and adjacent land. He also recognizes that Metroparks rangers may exercise law-enforcement authority when acting under an agreement with a neighboring jurisdiction. Here, however, Letts contends the State presented no evidence establishing who owned the property where ranger Adkins attempted a traffic stop. He asserts that "[t]he state failed to provide any direct evidence in regard to ownership of the property in question other than [detective] Fritz who only circumstantially provided his opinion on the property in question where the initiated traffic stop occurred."

{¶ 13} Although an extraterritorial traffic stop violates Ohio law, Letts recognizes that it does not necessarily constitute a constitutional violation. He cites *State v. Weideman*, 2002-Ohio-1484, and *State v. Brown*, 2015-Ohio-2438, and argues that a balancing test applies to determine the constitutionality of an extraterritorial traffic stop.

He also asserts that the Ohio Constitution provides greater protection than the U.S. Constitution against searches and seizures conducted by law-enforcement officers who lack authority to make an arrest. In the present case, Letts argues that ranger Adkins' attempt to stop him on Negley Place for a minor misdemeanor traffic offense constituted a Fourth Amendment violation because the stop was outside the ranger's jurisdiction and the government's minimal interest in making an extraterritorial stop was outweighed by the intrusion on his liberty and privacy.

{¶ 14} In response, the State contends Letts' argument about an extraterritorial stop was not a proper subject for a motion to dismiss, which tests the sufficiency of a complaint or indictment. The State reasons that Letts' argument raised a trial issue, namely whether ranger Adkins was conducting lawful police activity when he attempted the traffic stop. If Adkins was acting outside his territorial jurisdiction, then there was no lawful order with which Letts could comply, meaning that he could not be convicted of failure to comply with an order or signal of a police officer. The State maintains that this issue was not subject to resolution through a motion to dismiss the charges.

{¶ 15} Alternatively, the State contends Adkins possessed jurisdiction to stop Letts for the one-way violation on Negley Place. The State argues that R.C. 1545.13(B) gave Five Rivers Metroparks law-enforcement authority on its property and adjacent land. Relying on detective Fritz's testimony, the State claims Negley Place is adjacent to Five Rivers Metroparks property. The State also asserts that Adkins had territorial jurisdiction under a memorandum of understanding between Five Rivers Metroparks and the Miami Conservancy District.

{¶ 16} Upon review, we note that a challenge to an officer's territorial jurisdiction typically has been treated as a suppression issue. *See*, *e.g.*, *State v. Hall*, 2018-Ohio-2321, ¶ 62-64 (2d Dist.); *State v. Pierce*, 2003-Ohio-7244, ¶ 8-10 (2d Dist.); *State v. Creech*, 2024-Ohio-5245, ¶ 21-27 (12th Dist.). In a different context, we held in *State v. Gaines*, 2017-Ohio-8906 (2d Dist.), that a challenge to the legality of a stop was an issue for trial. In *Gaines*, the defendant moved to dismiss a charge for obstructing official business on the basis that officers had stopped and detained him without articulable suspicion. While recognizing that the case did not involve any evidence to be suppressed, we concluded that the legality of the stop was "related to the general issue at trial" and could not be raised in a motion to dismiss. *Id.* at ¶ 13, 17. We pointed out that a motion to dismiss merely tests the sufficiency of the charging instrument. *Id.* at ¶ 15.

{¶ 17} Here we need not dwell on whether Letts properly raised the territorial-jurisdiction issue in a motion to dismiss or whether he should have filed a motion to suppress or pursued the issue at trial. Regardless of how Letts presented the issue, the trial court correctly found that Adkins possessed jurisdiction to initiate a traffic stop on Negley Place.

{¶ 18} Under R.C. 1545.13(B), park rangers are authorized to "exercise all the powers of police officers within and adjacent to the lands under the jurisdiction and control of the board" of park commissioners. *See also Hall* at ¶ 64, citing *State v. Tooson*, 2009-Ohio-6269, ¶ 11 (2d Dist.). During the hearing on Letts' motion to dismiss, detective Fritz testified that Wolf Creek Trail is on Five Rivers Metroparks property. He also testified that Wolf Creek Trail is adjacent to Negley Place. Detective Fritz explained that Negley Place

had been patrolled by Five Rivers Metroparks "for years" because it is adjacent to Metroparks property. The State corroborated Fritz's testimony with exhibits in the form of maps depicting the area. Detective Fritz additionally testified that the Miami Conservancy District owns the Wolf Creek Levee, which also is adjacent to Negley Place. Fritz referenced a memorandum of understanding between Five Rivers Metroparks and the Miami Conservancy District giving Five Rivers Metroparks law-enforcement authority on Miami Conservancy District property and adjacent land. The State admitted the memorandum of understanding as an exhibit at the hearing.

{¶ 19} On appeal, Letts seeks to minimize Fritz's testimony. He asserts that the detective "only circumstantially provided his opinion on the property in question where the initiated traffic stop occurred." As noted above, however, Fritz plainly testified that Wolf Creek Trail is on Metroparks property and is adjacent to Negley Place where the attempted traffic stop occurred. Fritz also testified that the Miami Conservancy District's levee is adjacent to Negley Place and is under the law-enforcement control of Five Rivers Metroparks. The State supported this testimony with maps depicting the area and a copy of the memorandum of understanding between Five Rivers Metroparks and the Miami Conservancy District. As trier of fact, the trial court was entitled to credit Fritz's testimony and the accompanying exhibits to find that Adkins possessed territorial jurisdiction to initiate a traffic stop of Letts' vehicle on Negley Place.

{¶ 20} We recognize, however, that Adkins did not stop and arrest Letts on Negley Place. Letts fled the scene, and Adkins briefly pursued him before terminating the chase when Letts ran a red light. Within 30 minutes, Adkins located Letts at his Dayton home

and arrested him there. This scenario potentially implicates R.C. 2935.03(D), which authorizes a law-enforcement officer to "pursue, arrest, and detain" a suspect if (1) the pursuit takes place without unreasonable delay, (2) the pursuit is initiated within the officer's territorial jurisdiction, and (3) the offense is a qualifying one. Given that Adkins discontinued his direct pursuit while he investigated Letts' address, the subsequent arrest at Letts' residence conceivably could be too attenuated from the traffic violation to be the result of a "pursuit" initiated within Adkins' territorial jurisdiction, as required by R.C. 2935.03(D). *Compare State v. Henderson*, 2009-Ohio-4122, ¶ 9 (2d Dist.) (finding that a "leisurely five mile 'tail' of Defendant's vehicle" lacked "the urgency of purpose which a pursuit typically involves"). On the other hand, the First District Court of Appeals has determined that a "pursuit" under R.C. 2935.03(D) "need not be an uninterrupted chase, but may be part of the police investigation of an earlier crime*." State v. Winters*, 1990 WL 10977, *2 (1st Dist. Feb. 7, 1990). In *Winters*, officers located the defendant at his home within 25 minutes of a crime. While there was no "hot pursuit," the officers were continually searching for the defendant. Under these circumstances, the First District found the "pursuit" requirement satisfied. *Id.*

{¶ 21} Here we need not decide whether Adkins sufficiently pursued Letts from Negley Place to Letts' residence within the meaning of R.C. 2935.03(D). In his written motion to dismiss and during the hearing on his motion, Letts never referenced R.C. 2935 and argued only that Adkins lacked territorial jurisdiction to initiate a stop on Negley Place. Letts never asserted below that Adkins violated R.C. 2935.03(D) by properly initiating a stop but then discontinuing the pursuit before arresting him. Although Letts does cite R.C.

2935.03 on appeal, he still focuses on whether Adkins possessed territorial jurisdiction to initiate the stop on Negley Place. Given Letts' failure to argue the lack of a "pursuit" within the meaning of R.C. 2935.03(D), we have no occasion to resolve that issue. *See Henderson* at ¶ 12 ("[T]he motion to dismiss and/or suppress that Defendant filed . . . failed to argue a violation of R.C. 2935.03(D) as grounds for the relief his motion requested. Therefore, Defendant has waived the issue of failure to comply with R.C. 2935.03(D) for purposes of his appeal.").

**{¶ 22}** Based on the reasoning set forth above, we see no error in the trial court's determination that Adkins possessed territorial jurisdiction to initiate a traffic stop of Letts' vehicle on Negley Place. Accordingly, the assignment of error is overruled.

### III. Conclusion

**{¶ 23}** The two judgments of the Dayton Municipal Court, Criminal Division, are affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.